ALVAH N. DOW *vs.* CHARLES F. BULFINCH.

Essex.    May 15, 1906. — June 19, 1906.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Evidence.    Practice, Civil,* Conduct of trial.    *Alienation of Affection.*

Whether evidence of experiments shall be admitted at a trial must be left largely to the discretion of the presiding judge, the exercise of which will not be interfered with unless it appears clearly to be wrong.

In an action by the tenant of a tenement in a building against the owner of the building, for alienation of the affection of the plaintiff's wife by debauching and carnally knowing her, a woman who lived in a tenement above that of the plaintiff testified that when on her knees dusting around the heaters in the room over

the plaintiff's bedroom, where there was a board loose and a large opening at the steam pipes and the partition was thin, she heard in the room below the plaintiff's wife and the defendant use terms of endearment toward each other and heard a noise "either like patting or kissing." Another witness who occupied the tenement adjoining that of the plaintiff on the same floor, testified that a number of times when in a bathroom separated by a partition from the bathroom of the plaintiff's tenement she heard the plaintiff's wife and the defendant in the bathroom of the plaintiff's tenement. The defendant called witnesses who after this testimony was given, and eight years after the occurrences to which the witnesses had testified, had made experiments for the purpose of ascertaining whether or not sounds and conversations in the room below, formerly occupied by the plaintiff and his wife, could be heard in the rooms above, as testified to by the first witness, and whether or not voices in the bathroom of the plaintiff's tenement could be heard in the tenement occupied by the other witness. The judge excluded evidence of the experiments, but said that he would allow the defendant to show how the floors were constructed and the space between the ceiling of one room and the floor above it, and any details he wished to go into. *Held*, that the court could not say that the exclusion of the evidence of the experiments by the judge was clearly wrong, and therefore that this exercise of his discretion would not be interfered with.

In an action by the tenant of a tenement in a building against the owner of the building for alienation of the affection of the plaintiff's wife by debauching and carnally knowing her, the testimony of a woman who lived in the tenement above that of the plaintiff that on one occasion just after she had heard the defendant's voice in the plaintiff's tenement, she heard some one come out of that tenement and go downstairs to one of the entrances of the building as the plaintiff was coming up from a different entrance of the building, is admissible and its weight is for the jury.

In an action by the tenant of a tenement in a building against the owner of the building for alienation of the affection of the plaintiff's wife by debauching and carnally knowing her, there was evidence tending to show, among other things, that, when the plaintiff was not present the defendant was accustomed to visit the plaintiff's tenement two or three times a week in the forenoon and once or twice a week in the afternoon, that the visits in the forenoon lasted from fifteen minutes to an hour and those in the afternoon from fifteen minutes to all the afternoon, and that as a rule after the defendant entered the tenement the door was locked. Against the exception of the defendant, the plaintiff's mother was allowed to testify that upon one occasion she found the door of the plaintiff's tenement locked with the key on the inside, and "rattled the door very loudly" and heard voices inside, and that one was the voice of a man. *Held*, that although this testimony standing by itself might have been of little, if any, weight, the jury properly might consider it in connection with the other testimony.

TORT for the alienation of the affection of the plaintiff's wife, with two counts, the first alleging that the defendant on various days and times between August 1, 1896, and the date of the writ, intending to alienate and destroy the affections of the plaintiff's wife, wrongfully and wickedly debauched and carnally knew her, whereby her affection for the plaintiff was wholly alienated and

destroyed, and the plaintiff wholly lost the comfort of her society, aid and assistance; and the second count alleging that the defendant persuaded, procured and enticed the plaintiff's wife to leave his house and to continue absent therefrom. Writ dated July 21, 1902.

At the trial in the Superior Court before *Aiken*, C. J. the plaintiff discontinued as to his second count, and the case was submitted to the jury on the first count. The jury returned a verdict for the plaintiff in the sum of $6,000; and the defendant alleged exceptions, raising the questions as to the exclusion and admission of evidence which are stated in the opinion.

*W. H. Niles & H. R. Mayo*, for the defendant.

*J. H. Sisk, W. E. Sisk & R. L. Sisk*, for the plaintiff.

HAMMOND, J. This is an action in which the plaintiff seeks to recover damages for the alienation of his wife's affections by the defendant. The trial was upon the first count in the declaration which alleged that the defendant at various times between August 1, 1896, and July 21, 1902, intending to alienate and destroy the affection of the plaintiff's wife, wrongfully and wickedly debauched and carnally knew her, by means whereof her affection for the plaintiff was wholly alienated, etc.

The defendant, before August, 1896, had built a block, the first floor of which was divided into stores, "the second floor into two tenements, each of which contained five rooms and a bathroom, and a common hall dividing both tenements." The third floor was a duplicate of the second. The plaintiff with his wife occupied a tenement on the second floor from August 1, 1896, to May, 1902. The evidence tended to show that, beginning shortly after the plaintiff moved into this tenement, the defendant "was accustomed to visit" there "two or three times a week in the forenoon, and one or two times a week in the afternoon, and that this continued substantially down to the time the plaintiff ceased to live in the defendant's block"; that the plaintiff was not present; that the visits in the forenoon lasted "from fifteen minutes to one hour," and those in the afternoon "from fifteen minutes to all the afternoon"; and that, as a rule, after the defendant entered the tenement the door was locked. The plaintiff's wife was under thirty years of age, and the defendant, who was a druggist carrying on business a short distance from

the block, was between forty and fifty years of age. The doors of the various tenements were generally kept locked.

1. One Burton, called by the plaintiff, testified that during four months in 1897 she lived with the family of one Thompson, who occupied the tenement on the third floor directly above the plaintiff's tenement; that the first time she heard the plaintiff's wife and the defendant together they were in the dining room of the plaintiff's tenement, and the witness heard "the click of glasses and a noise made as though they were stirring something in a pitcher with a spoon"; that she heard their voices but did not hear what they said. She further testified that at another time she heard them use terms of endearment toward each other, and heard also a noise "either like patting or kissing," she "could not tell which"; that at this time she was in a bedroom in Thompson's tenement, "dusting around the heaters"; that heating pipes came from the plaintiff's tenement to heat the rooms in the Thompson tenement. On cross-examination she testified that at the time she heard the language and noise she was on the floor "dusting the floor"; that "there was a loose board, there was a large opening at the steam pipes, and I was down dusting and fixing the place, and you could hear very plainly, and I heard it"; that she could not say whether there was an opening into the room below, "but the boards were up so that the partition was so thin between that I could hear plainly, and the space around the pipes was such that I could hear plainly"; that she did not have "her ear down" there, but was down on her knees and heard the sounds; that she listened after she heard a few words. It was subsequently shown that the room where the witness was at work dusting at the time of hearing the above conversation and noise was directly over the plaintiff's bedroom. The plaintiff testified that the collars on the steam pipes, which ran through his tenement to the one above, frequently dropped from their position. There was no other evidence in the case of words of endearment. There was evidence that this witness was hostile in her feelings towards the defendant.

One Palmer, a witness called by the plaintiff, who occupied a tenement upon the same floor with the plaintiff, testified to hearing the plaintiff's wife and the defendant in the bathroom of the plaintiff's tenement a number of times. It appeared that there

was a partition between the two bathrooms, and that there was no opening, transom or window in the partition.

This evidence was given on September 9, 1905, and, to rebut it, the defendant offered to show that it was impossible to hear sounds and voices as testified to by these witnesses; and he called witnesses who had made experiments immediately after this testimony for the purpose of ascertaining " whether or not sounds and conversations in the room below formerly occupied by the plaintiff and his wife could be heard in the rooms above as testified to by Mrs. Burton, and whether or not voices in the bathroom connected with the plaintiff's tenement could be distinguished in the tenement occupied by the witness Palmer."

One of these witnesses was asked to describe these experiments. Upon the objection of the plaintiff the evidence as to the experiments was excluded. The defendant then offered to show that, the conditions being the same, it was impossible in these experiments to hear conversations, however loud, of persons in either of the rooms as testified to by Burton and Palmer. The presiding judge excluded the evidence of the experiments, but said that he would allow the defendant to show " how the floors were constructed and the space between the ceiling of one room and the floor above it, and any details which you may wish to go into," adding, " Experiments that are made I exclude."

The question upon this branch of the case is whether the exclusion of this evidence is error. It is to be noted that it nowhere appears that the opinion of any witness as to whether or not such sounds could be heard was excluded or even offered. Simmons, the builder, was not asked what his opinion was. The fact that he had made tests was admitted. He was not asked his opinion. He was the contractor who had built the block for the defendant, and may well be supposed to have an opinion as a builder on that question. The only thing excluded was the evidence offered to show in detail the nature of the experiments.

As has been frequently said, the question whether evidence of experiments shall be admitted must be largely left to the discretion of the trial judge, and that discretion will not be interfered with unless in its exercise he clearly appears to be wrong. The experiments were made nearly, if not quite, eight years

after the occurrences to which Burton and Palmer testified. The conditions testified to by Burton were evidently somewhat peculiar. The judge may well have thought that the trial of the question whether the conditions were in all respects the same, what changes if any had taken place in the adjustment of the heaters, what was the relative situation of the persons making the test, and whether the surrounding noises, if any, were the same, would lead to an extended inquiry upon collateral matters which would be of no practical assistance to the jury, and that the more direct and logical course was to explain to the jury the exact physical situation at the time of the alleged occurrences and to leave it to their common knowledge whether under such a state of things the witnesses for the plaintiff were to be believed. While these remarks apply with greater force to the evidence of the witness Burton, they are applicable, though in a less degree, to the evidence of Palmer. We cannot say as matter of law that the exclusion of the evidence was clearly wrong. See *Commonwealth* v. *Tucker*, 189 Mass. 457, 477.

2. The evidence of Burton that she on one occasion heard some one come out of the plaintiff's tenement and go down stairs to the Chestnut Street entrance as the plaintiff was coming up at the Lewis Street entrance, just after she had heard the defendant's voice in the plaintiff's tenement, was rightly admitted. Its weight was for the jury.

3. And the same may be said of the testimony of the plaintiff's mother that upon one occasion she found the door of the plaintiff's tenement locked with the key on the inside, and " rattled the door very loudly," and heard voices inside, and that one was the voice of a man. This testimony standing by itself may have been of little, if any, weight, but the jury might properly consider it in connection with the other testimony.

*Exceptions overruled.*