RICHARD BECHTEL vs. PAUL CLARK, INC.

Middlesex.   May 19, 1980. — November 7, 1980.

Present: ARMSTRONG, GREANEY, & PERRETTA, JJ.

*Evidence,* Judicial discretion, Experiment, Prior consistent statement.
*Practice, Civil,* Correction of record on appeal. *Uniform Commercial
Code,* Warranty. *Warranty,* Lease.

In an action for damages for personal injuries sustained by the plaintiff
   when his rented automobile collided with a guardrail allegedly
   because of an imbalance between the brakes, the judge did not abuse
   his discretion in admitting in evidence the results of an experiment
   conducted by the defendant's expert as to the behavior of an automo-
   bile with an imbalance defect where the dissimilarities between the ac-
   cident and the test situation were such that the jury could make proper
   allowance for any effects resulting from them.  [688-689]
This court declined to revise a record pursuant to Mass.R.A.P. 8(e) to re-
   flect that an offer of proof was made as to a document which was ex-
   cluded at an unrecorded side-bar conference where an affidavit in sup-
   port of the rule 8(e) motion was directly contradicted by the opposing
   party and the judge's denial of the motion was based upon a lack of
   recollection.  [689-694]
In an action for damages for personal injuries sustained in an automobile
   accident, the judge did not abuse his discretion in excluding from
   evidence a statement contained in a hospital report as to how the acci-
   dent happened where the statement was nothing more than what both
   parties agreed had happened.  [694-695]
The amendment of G. L. c. 106, § 2-318, by St. 1973, c. 750, § 1, could
   not be retroactively applied to an action for personal injuries sustained
   more than two years prior to the amendment.  [695]

TORT OR CONTRACT.  Writ in the Superior Court dated
October 4, 1973.

The case was tried before *Morse,* J.

*Robert Snider* for the plaintiff.

*Lawrence G. Cetrulo (Thomas D. Burns* with him) for
the defendant.

PERRETTA, J.  The plaintiff, Bechtel, brought this action for damages for personal injuries which he sustained when the car that he had rented from the defendant, Paul Clark, Inc. (Clark), collided with a guardrail and flipped over.  He alleged that his injuries were caused by Clark's failure: (1) to properly inspect the car's braking system, (2) to act upon complaints concerning the brakes, and (3) to warn the plaintiff about the defective condition of the brakes.  Bechtel also claimed that Clark had breached its warranties of fitness and merchantability.  The judge granted Clark's motion for a directed verdict on the warranty count, and the jury returned a verdict for Clark on the remaining counts.  We affirm the judgments.

Clark sells and rents Ford automobiles.  On the afternoon of October 15, 1971, Bechtel telephoned Clark and spoke with William Catrambone, the general manager.  Bechtel reserved a rental car which he planned to drive to New Hampshire later that day.  About 4:00 P.M. he and his wife Virginia went to Clark's, completed the usual rental forms and picked up a new 1972 Maverick.  The odometer indicated that the car had been driven about one hundred miles.  In order to get "the feel" of the car, Bechtel drove about seven miles before returning home.  According to his testimony, Bechtel felt that the car wanted to "move to the left" every time he applied the brakes.  He stated that he called Catrambone about 5:00 P.M. that day to report his observations about the brakes but that Catrambone reassured him he need not be concerned.  Bechtel also testified that Catrambone told him it was the only rental car still available at Clark's.

Shortly after this alleged conversation Bechtel and his wife set out on Route 3 bound for New Hampshire.  Bechtel was driving north at a speed of about 50 miles an hour in the passing lane of the divided highway, when a small sports car darted in front of him.  As Bechtel applied the brakes to avoid hitting the sports car, the Maverick moved to the left, hit the guardrail, and flipped over.

Catrambone contradicted Bechtel's testimony, stating that he never received a telephone call from him concerning

a complaint about the Maverick's brakes. He also stated that he kept a log which showed that two other cars were available for rental at Clark's that day. Catrambone testified that he had driven the Maverick about 500 feet before turning it over to Bechtel and that he had had no trouble with its brakes. Mrs. Bechtel testified that she had heard her husband's end of the alleged telephone conversation.

The car had been rented only once before to one O'Boyle on October 14, 1971. O'Boyle said that he had driven the car about one hundred miles in stop-and-go city traffic and on the Southeast Expressway. He did not recall having any difficulty with the brakes.

Joseph Harris, a physicist and expert witness presented by the plaintiff, testified that in his opinion the Maverick's deviation from its course on the day of the accident was probably caused by an imbalance between the left and right brakes. According to Harris, if an imbalance existed, a car travelling at fifty miles an hour would move to the left when the brakes were applied, unless it was controlled by an expert driver who expected the imbalance to occur.

The defendant's expert witness, Robert Dale, testified over the plaintiff's objections as to his observations concerning an experiment conducted in anticipation of the present trial. The experiment was run at the Ford Motor Company Dearborn Proving Ground with a reconditioned 1972 Maverick. The purpose of the test, according to Dale, was to observe the effect of stopping the car with and without locked wheels at various speeds and at various brake imbalances. The car was driven by a Ford employee who spent approximately thirty per cent of his work time driving cars. He had been instructed to drive the reconditioned Maverick just as an average prudent driver would. Dale testified that based upon these tests it was his conclusion that, even with a complete restriction in the front right wheel to simulate imbalance, hard brake application at fifty miles an hour would result in no deviation of the car from its path, provided that the driver held the car steady by appropriate steering adjustments.

Despite the apparent compatibility of the testimony of these two expert witnesses — that driver control was the crucial factor in determining whether a car with a brake imbalance traveling at fifty miles an hour would deviate from its path when the brakes were applied — Bechtel appeals from the admission in evidence of Dale's testimony. He contends that the test was essentially dissimilar to the circumstances of the accident because the test driver was an expert, was not surprised, and made the necessary steering correction.

1. *Evidence of Experiment.*

It is well settled in the Commonwealth that "the question whether evidence of experiments shall be admitted must be largely left to the discretion of the trial judge, and that discretion will not be interfered with unless in its exercise he clearly appears to be wrong." *Dow* v. *Bullfinch*, 192 Mass. 281, 285 (1906). *Guinan* v. *Famous Players-Lasky Corp.*, 267 Mass. 501, 521 (1929). *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 592 (1956). *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 365 (1980). In ruling upon the admissibility of testimony regarding experimental evidence, the court must weigh its probative value against the possibility that it will mislead or prejudice the jury. See *Green* v. *Richmond*, 369 Mass. 47, 59-60 (1975); McCormick, Evidence § 202, at 485-486 (2d ed. 1972). Evidence of the behavior of a reconditioned 1972 Maverick equipped to simulate an imbalance defect such as that posited by the plaintiff's expert, when subjected to braking at various speeds, could have assisted the jury in determining how the Maverick driven by Bechtel reacted when he applied the brakes at like speed under similar conditions on October 15, 1971. The evidence was competent, and it was within the judge's discretion to admit it. See *McCarthy* v. *Curry*, 240 Mass. 442, 444 (1922); *Commonwealth* v. *Ellis*, 373 Mass. 1, 5 (1977).

The question whether the conditions of the experiment and those of the original accident are sufficiently similar to make the observation of any value to the jury was also with-

in the discretion of the judge.  *Field* v. *Gowdy*, 199 Mass. 568, 574 (1908).  *Commonwealth* v. *Makarewicz*, 333 Mass. at 592-593.  *Griffin* v. *General Motors Corp.*, 380 Mass. at 365. Any differences in circumstances which might have made the comparison less useful were adequately developed by the plaintiff.  *Commonwealth* v. *Ellis*, 373 Mass. at 5.  Indeed lack of surprise and any difference in driving skill between Bechtel and the test driver are dissimilarities readily apparent to the jury's understanding and common sense.  These dissimilarities affect the weight of the evidence and not its admissibility.  See Louisell & Mueller, Federal Evidence § 103 (1977).

Bechtel's assertion that the accident and the test were insufficiently similar because the test driver made steering corrections while he, Bechtel, did not, does not support his contention that the judge abused his discretion.  Rather, this dissimilarity was probative as to Bechtel's argument that a steering adjustment was necessary but that he did not have the time to make it.  We conclude that the dissimilarities cited by Bechtel were all such that the jury could make proper allowance for any effects which might have resulted from them.  See *Guinan* v. *Famous Players-Lasky Corp.*, 267 Mass. at 522; Leach & Liacos, Massachusetts Evidence 309-310 (4th ed. 1967).

2. *Record on Appeal.*

On the third day of trial plaintiff's counsel examined Russell Brundage, an appraiser employed by Clark's insurer.  Brundage stated that, when he examined the Maverick for body damage, he also inspected its brakes. This was the first time he had ever inspected brakes in the course of his work as a professional appraiser.  While Brundage was testifying, plaintiff's counsel approached the bench and requested that a two-page interoffice memorandum dated October 20, 1971 (the Brundage memo), be marked for identification; the side-bar conference was recorded.  The judge allowed this request but indicated that he would exclude the Brundage memo from evidence.  No more was said about the memo and counsel resumed his questioning of the witness.

On the fifth day of trial plaintiff's counsel produced Dr. William McCann as a witness. Dr. McCann had examined the plaintiff when he was admitted to the Lowell General Hospital and had obtained the details of the accident from Mrs. Bechtel.[1] When plaintiff's counsel attempted to elicit these details from Dr. McCann, defense counsel objected. The objection was sustained and a side-bar conference was held so that plaintiff's counsel could make an offer of proof. This conference was reported. Plaintiff's counsel argued that Dr. McCann's hospital record was admissible to show prior consistent statements because defense counsel, through cross-examination of the plaintiff's witnesses, had injected the notion of recent contrivance into the trial. The judge excluded the evidence.

Joseph Harris, the plaintiff's expert, testified on the fifth day of trial, and his file and its contents were marked for identification. The following day plaintiff's counsel sought to introduce the file and its contents, which included a copy of the Brundage memo, in evidence. This attempt was made at an unreported side-bar conference, and the record reflects only that the evidence was excluded.

While preparing this appeal almost a year later, plaintiff's counsel discovered that the side-bar conference held on the sixth day of trial was unreported. Accordingly, he brought a motion before the judge who had presided at the trial and requested that the judge order the record to be supplemented, pursuant to Mass.R.A.P. 8(e), 365 Mass. 851 (1974),[2] to reflect the substance of that unreported side-

---

[1] In a hospital report prepared by Dr. McCann on or about October 16, 1971, he stated: "[A]ccording to [Mrs. Bechtel], who was a front seat passenger, a small foreign auto jumped in front of their car as they were in the passing lane and the patient put on the brakes and the car left the road to the left and hit the side-rail and apparently overturned."

[2] Rule 8(e) provides: "If any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the lower court, either before or after the record is transmitted to the ap-

bar conference. Plaintiff's counsel alleged that the Brundage memo contained the statement, "Operator complained brakes failed"; that, when he offered the Harris file and its contents in evidence, he was really offering the Brundage memo in evidence; that the Brundage memo was admissible as a prior consistent statement to refute defense counsel's claim of recent contrivance; that this theory of admissibility had been previously asserted to the judge during the trial in relation to Dr. McCann's testimony and records (see note 1, *supra*); that he had specifically objected to the exclusion of the Brundage memo; that he had been unaware of the fact that the side-bar conference was not being stenographically recorded. Plaintiff's counsel also submitted an affidavit in support of this motion. In his affidavit, he stated that at the conference he "formally moved for the admission of Mr. Brundage's report and of Dr. McCann's report on the ground that they were prior consistent statements," and that he "specifically objected to the Court's exclusion of the same." The judge denied the motion and stated, "I have no memory as to whether you specifically said in substance that you wanted Mr. Brundage's report or Dr. McCann's report or both of them admitted on the ground that they were prior consistent statements admissible because of the charge of recent contrivance. That may have occurred; that may not have occurred . . . I simply have no memory of it."

Unless corrected pursuant to Mass.R.A.P. 8(e), 365 Mass. 851, the record does not reflect that plaintiff's counsel offered the Brundage memo in evidence during the sixth day of trial.[3] Plaintiff's counsel next sought relief by asking

---

pellate court, or the appellate court, or a single justice, on proper suggestion or on its own motion, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to a single justice."

[3] Plaintiff makes no argument concerning the admissibility of the Harris file as a whole. Rather, it is his contention that at the side-bar conference he segregated the Brundage memo from the Harris file and specifically

a single justice of this court to allow supplementation of the record to include his affidavit and the transcript of the hearing on his rule 8(e) motion before the trial judge "so that the Appeals Court may determine on appeal whether or not the appellant had saved his rights" to argue the propriety of the ruling excluding the Brundage memo from evidence on the sixth day of trial. Defense counsel also requested supplementation to include affidavits by them stating that it was their recollection of the disputed bench conference that plaintiff's counsel did not offer the Brundage memo in evidence, that he did not indicate any grounds for the admissibility of the memo, and that he offered no arguments concerning prior consistent statements. The single justice deferred action on these motions so that they could be considered in conjunction with the plaintiff's direct appeal from the judgments on his complaint.

It is clear that under rule 8(e) this court has the power to direct that the record be corrected to reflect that on the sixth day of trial plaintiff's counsel moved for the admission of the Brundage memo in evidence. However, even an allowance of the motions to supplement the record in the manner requested by the parties will not provide this court with an adequate basis for ordering correction of the record as requested. Our conclusion is founded upon the construction given the cognate provisions of Fed.R.App.P. 10(e), to which we look for guidance. See *Rollins Environmental Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 179-180

---

moved for the admission of the Brundage memo. Additionally, he does not argue that the Brundage memo was wrongfully excluded from evidence on the third day of trial. He points to the third day of trial only to argue that on that day he complied with Mass.R.Civ.P. 43(c), 365 Mass. 806-807 (1974), by offering the memo and having it marked for identification. He argues that when he reoffered the memo on the sixth day, the judge was aware both of the action he desired and of the grounds for the admissibility of the memo. Thus, plaintiff concludes that his right of appellate review of the exclusion of the memo has been preserved because of compliance with Mass.R.Civ.P. 46, 365 Mass. 811 (1974). That argument, however, begs the issue before us, which is whether the record can now be supplemented and corrected to reflect that he offered the Brundage memo on the sixth day of trial.

(1975). Under the Federal rule, "[w]hen a dispute respect-ing the record is submitted to the district court, its deter-mination is conclusive, absent a showing that the district court has intentionally falsified the record. The district court may decline to correct the record if it has no recollec-tion of matters sought to be included therein." 9 Moore's Federal Practice par. 210.08[1], at 10-48 (2d ed. 1980). Moreover, it is clear from Federal authorities that a judge's denial of a motion under rule 10(e) because of an inability to recollect and resolve the disputed issue is, therefore, virtual-ly unreviewable. *Century Indem. Co.* v. *Arnold*, 153 F.2d 531, 533 (2d Cir.), cert. denied, 328 U.S. 854 (1946). *Camps* v. *New York City Transit Authy.*, 261 F.2d 320, 323 (2d Cir. 1958). *Cox* v. *General Elec. Co.*, 302 F.2d 389, 390 (6th Cir. 1962). *Sanford Bros. Boats* v. *Vidrine*, 412 F.2d 958, 971 (5th Cir. 1969).

This construction of rule 10(e) is similar to that which was given to our analogous pre-rules practice of appeals by way of a bill of exceptions. See G. L. c. 231, §§ 113-117, as in effect prior to St. 1973, c. 1114, § 202. Under the former procedure, an aggrieved party prepared a bill of exceptions and presented it to the opposing party and the trial judge. If the judge found that the bill conformed to the truth, he allowed it. Conversely, if he did not so find, he disallowed it, and the aggrieved party could then petition the Supreme Judicial Court to establish the truth of the alleged excep-tions. *Jones* v. *Hayden*, 314 Mass. 519, 521-522 (1943). See Reed, Equity Pleading and Practice §§ 891-896, at 224-235 (1952). When the parties could not agree as to what had oc-curred and the trial judge had no recollection of what had transpired, a petition to the Supreme Judicial Court to es-tablish the exceptions was the only proper remedy. *Nicho-las* v. *Lewis Furniture Co.*, 292 Mass. 500, 504 (1935). The Supreme Judicial Court, in turn, referred such petitions to a commissioner who was to ascertain the facts on the basis of the statements of the parties. He was also to consider the trial judge's certificate disallowing the bill as prima facie ev-idence that the exceptions did not conform to the truth;

thus, unless rebutted, explained, or overcome by other evidence, the certificate of disallowance was to stand. *Sawyer v. Yale Iron Works,* 116 Mass. 424, 432 (1875). See *Commonwealth* v. *Joslin,* 158 Mass. 482, 484 (1893); *Moneyweight Scale Co., petitioner,* 225 Mass. 473, 479 (1917).

Guided by the construction given to Federal rule 10(e) and to bills of exceptions under our former practice, we view an affidavit directly contradicted by the opposing party as insufficient to overcome a trial judge's denial of a rule 8(e) motion based upon a lack of recollection. Moreover, the chronology of events found in the record and recited in this opinion neither supports nor refutes the allegations set out in the affidavits. Thus, while appellate review of the denial of the rule 8(e) motion is possible, the appellant has not shown that he is entitled to relief. "It is clear that it was the responsibility of appellant's counsel to have a record made of any off-the-record colloquies with the court that he wished to preserve. There is no claim that appellant's counsel did not have the opportunity to have a record made of such colloquies with the court, and he cannot preserve his unrecorded challenge to certain [rulings] by alleged colloquies which he did not have stenographically recorded." *Cox* v. *General Elec. Co.,* 302 F.2d at 390. Consequently, we cannot direct that the record be revised to reflect that such an offer was made, because to do so in this instance would merely be to substitute arbitrarily our judgment for that of the trial judge. That is not a function of an appellate court. *Markell* v. *Sidney B. Pfeifer Foundation, Inc.,* 9 Mass. App. Ct. 412, 429-430 (1980).

3. *Prior Consistent Statement.*

The plaintiff argues that the McCann report should have been admitted in evidence on the theory of a prior consistent statement.[4] In excluding this evidence the judge found that

---

[4] The plaintiff also argues that the Brundage memo was admissible on this theory. Even were we to have found that plaintiff's counsel (1) had offered the memo and (2) had offered it on this basis, we would conclude that the judge acted within the bounds of his discretion in excluding the memo. See *Commonwealth* v. *Tatro,* 4 Mass. App. Ct. 295, 304-305

the statement contained in the report (see note 1, *supra*) was nothing more than what everyone agreed had happened and that it was not admissible as a prior consistent statement. That determination was a matter within the sound discretion of the judge. *Commonwealth* v. *Tatro*, 4 Mass. App. Ct. 295, 304-305 (1976), and cases cited. Viewing the statement in light of the issues being tried, whether there was a defect in the car's brakes and, if so, whether that defect caused the plaintiff's injuries, we cannot say that the judge abused his discretion in excluding the statement from evidence.

4. *Breach of Warranties.*

There was no error in directing a verdict for the defendant on that count of the plaintiff's complaint alleging breach of warranties of merchantability and fitness. The lease of the automobile and the plaintiff's injuries occurred on October 15, 1971, more than two years before G. L. c. 106, § 2-318, was amended by St. 1973, c. 750, § 1, to include lessors. We are unpersuaded by the plaintiff's argument that the 1973 amendment is merely legislative recognition of a judicial proclivity to recognize common law warranties in transactions not involving traditional sales. See, e.g., *Cobb* v. *New England Mut. Marine Ins. Co.*, 6 Gray 192, 199 (1856); *Friend* v. *Childs Dining Hall Co.*, 231 Mass. 65, 70 (1918); *Boston Housing Authy.* v. *Hemingway*, 363 Mass. 184, 199 (1973). The issue of retroactive application of § 2-318 has been determined. "Section 2-318 applies to leases which are made and to injuries which occur after the effective date of the 1973 amendment. St. 1973, c. 750, § 2. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 34-36 (1977)." *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 631 (1978).[5]

*Judgments affirmed.*

(1976); *Commonwealth* v. *Darden*, 5 Mass. App. Ct. 522, 527-528 (1977), and authorities cited.

[5] Moreover, this issue is immaterial in light of our affirmance of the judgment. In response to a special question put to them, the jury specifically found that the accident was not caused by a defect in the brakes or a defect in the braking system of the defendant's car. In view of the jury's finding that no defect existed, no warranties could have been breached.