CLAIRE SACKS *vs.* ROUX LABORATORIES, INC.; SALON
LOUIS FELIPE, INC., third-party defendant.

No. 87-729.

Norfolk. February 16, 1988. — April 22, 1988.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Negligence,* Defective product, Manufacturer, Hairdresser. *Warranty. Evidence,* Experiment, Verbal completeness.

In an action against the manufacturer of a peroxide hair bleach by a plaintiff
who suffered a disfiguring hair loss after the bleach was applied to her
hair, the judge acted within his discretion in holding that the claimed
results of certain tests of the product, conducted under the control of
the manufacturer, were of such low ultimate value that they should be
excluded from evidence. [674-676]

Where a manufacturer, in an action arising out of the alleged malfunctioning
of its hair bleaching product, attempted to impeach an opposing witness,
a licensed hairdresser, by using the witness's testimony in another case
in which he and the manufacturer had both been defendants, there was,
in the circumstances, no error in the admission of testimony that the
jury in that case had found in the witness's favor. [676-677]

CIVIL ACTION commenced in the Superior Court Department
on March 17, 1982.

The case was tried before *Roger J. Donahue,* J.

*Eugene F. Nowell* for Roux Laboratories, Inc.

*Gary D. Buseck* for Salon Louis Felipe, Inc.

*Charles F. Nayor* for the plaintiff.

KAPLAN, J. When treated with "Roux Gentle Blonde Low
pH Bleach" (Gentle Blonde) at a hairdresser's salon in Brookline, the plaintiff Sacks suffered a disfiguring hair loss. She
sued the defendant Roux Laboratories, Inc. (Roux), manufacturer of the product, and Roux impleaded Salon Louis Felipe,
Inc. (Felipe), the operator of the salon. A jury by answers to
special questions found Roux in breach of an express or implied

warranty of Gentle Blonde and negligent in its manufacture, and Felipe free of negligence in applying it to Sacks's hair. Roux appeals from the judgments in favor of Sacks and Felipe. It does not contest that the answers, and thus the judgments, were supported by the evidence, but argues that the judge committed errors in the exclusion and admission of evidence that call for a new trial (duly requested) of the main and third-party cases. We affirm.

The plaintiff Sacks had for many years caused her hair to be bleached and the color changed from natural brown to blonde. On April 12, 1980, she made one of her regular visits (these were at monthly or five-week intervals) to the Felipe hairdressing establishment where she was attended by Felipe Feijoo. Feijoo recommended that he use a new Roux product, Gentle Blonde. This bleach, intended for professional not home use, advertised on its package and in its instructions that it would not "creep" or "swell"; also that it was suited to sensitive scalps, thus making it well adapted to Sacks's needs.[1]

Professionals understand that in the application of a peroxide bleach such as Gentle Blonde, a certain amount of "swell" will occur along the hair. Thus if the hair has grown from the roots a distance of one-half inch to the line of the previously bleached hair, the hairdresser will apply the bleach to a distance of, let us say, one-quarter inch to allow for the swell. If the bleach in the case supposed encroaches by swelling beyond the one-half inch and reaches past the line of the hair previously bleached, there is known danger that the hair will break at or near the line. The breakage occurs because hair is weakened by a bleach and may be vulnerable if exposed to another dose.[2]

Feijoo applied Gentle Blonde to Sacks's hair with caution as indicated. The bleach, instead of swelling slightly, rose

---

[1] On the package appeared the statement: "Doesn't creep or swell; stay-put consistency; applies easily. Consistency equal to, in some cases better than, competitive bleaches." There was testimony that on the package or in the enclosed instructions was a statement to the effect that the consistency of the bleach made it especially appropriate for use on sensitive scalps.

[2] After the bleach eliminates color from the hair a "toner" is applied to fix the desired color.

"like it had yeast in it, like a cake" and passed over the critical line. Prompt, copious rinsing of the hair did not avail and there was extensive breakage. The disfigurement through loss of hair was such that Sacks was obliged to wear a wig for perhaps a year and a half until her hair grew back sufficiently to be styled. Sacks also suffered over a period of time from scaling and irritation of the scalp.

The foregoing are the basic facts as the jury may be assumed to have found them. In addition the jury could credit evidence describing like incidents about the same time at two other hairdressers' salons in or near the Boston area, as well as evidence of complaints by nine additional hairdressers located there about similar malfunctioning of the product. No material objection was taken to the reception of any of the evidence so far described.

Roux argues on this appeal that, in attempting to show that the casualty in Sacks's case (and presumably in the other instances) resulted from misuse rather than from any defect in the product, it was hampered by erroneous rulings of the trial judge.

1. Dr. Earle W. Brauer, dermatologist and vice president for medical affairs of the Revlon Research Division, was called as an expert for Roux (Roux is wholly owned by Revlon Corporation). He described an experiment or test carried out under his direction in 1984 at the request of Roux's counsel in preparation for the lawsuit. The exercise consisted of taking a woman whose hair had been previously bleached, dividing her hair into three parts, and applying Gentle Blonde to one part and competitive products to the other parts. Objection was sustained to the witness's giving his view of the result of the test; by offer of proof it was indicated he would testify that Gentle Blonde did not swell more than the other products.

The description of Brauer's test lacked detail and exactitude. The triers were not told the precise condition of the particular woman's hair, or the instructions, if any, given to the hairdresser, or how the particular product exemplar was selected. There were manifest possibilities of conscious or unconscious skewing of the test by the one supervising it, here a person associated

with the defendant in the action. There was but one test, an unimpressive number.

The question of admitting the supposed result of an experiment or test of the character designed by Brauer turns on whether the attendant conditions and circumstances approach so nearly those of the event in suit that something material can be inferred about the cause or causes of the event. And the well known discounts must be considered, such as the tendency of the evidence, if received, to invite collateral inquiries. Our cases recognize that these issues call for the exercise of judgment by the trial judge, and so it is commonly said that admission or exclusion lies within the judge's sound discretion. See *Jacquot* v. *Wm. Filene's Sons*, 337 Mass. 312, 317-318 (1958); *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 365-366 (1980); *Calvanese* v. *W. W. Babcock Co.*, 10 Mass. App. Ct. 726, 731 (1980). Cf. *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163 (1983). In the present case we do not doubt that the judge acted within the discretionary range when he held that the claimed result of Brauer's test was of such low ultimate value that it should be excluded.

Rather than viewing Brauer's demonstration as an experiment, it might be plausible to take it, alternatively, as simply providing one instance of safe use of the product after the event in suit. But the production of such an instance would make only negligible progress toward proving that Sacks's misfortune resulted from misuse; it may be suggested that if safe use were to weigh at all, it would have to be shown in large numbers. See the remarks in *Robitaille* v. *Netoco Community Theatre,* 305 Mass. 265, 268-269 (1940).

Dr. Brauer in fact testified to a thousand two-part tests carried out with Gentle Blonde before it was introduced in the trade, which in his opinion demonstrated that the product was as "efficient" (presumably including the safety factor) as any competitor's product. Also he was allowed to give his rather speculative opinion, based only on examining photographs of Sacks's head after the injury, that Feijoo had not acted with due care in applying Gentle Blonde to Sacks's hair.

Jacqueline Daniels Mullikin, a licensed hairdresser serving as sales representative of Roux, was sent to Boston to follow up on the complaints that had been lodged up to mid-April, 1980. (The product was launched earlier that year, possibly in February.) As part of her testimony she spoke of using Gentle Blonde on six or seven "models" at the laboratory located in Jacksonville, Florida. Again there was objection to the judge's exclusion of testimony by Mullikin about the results. This proffered testimony by Mullikin was much like Brauer's cognate testimony, and we notice that she did not divide the subjects' hair as a kind of "control" as Brauer had done.

2. Among the witnesses called by Felipe to prove actual instances of the malfunctioning of Gentle Blonde was Ray Cabral, a licensed hairdresser located in North Dartmouth. He recounted an experience of excessive swelling when he applied the bleach to a customer, Judith Roth. In cross-examination, Roux's counsel brought out that Cabral (actually it was his company, Ray-Stel's) was a defendant, together with Roux, in an action by Roth, and that present counsel for Sacks had represented him in the Roth case and had asked him to come and testify for Sacks. The examiner went further and used Cabral's testimony in the Roth case as a means of attempting to impeach his present testimony. On redirect, Felipe's counsel drew from Cabral that the jury in the Roth case found in his, Cabral's, favor.[3] The judge answered Roux's objection (and its later motion for a mistrial) by saying "you did open it up." There comes a point when the jury are entitled to hear the other shoe drop. Had the jury not been told the Cabral verdict, they might have been led by the cross-examination to suppose that he lost the Roth suit and had come to testify in the Sacks suit out of pique, in order to even his accounts with Roux. Regarding the admission of evidence to complete a picture half (and possibly misleadingly) painted, see *Foley* v. *Lord,* 232 Mass. 368, 371 (1919); *Commonwealth* v. *Watson,* 377 Mass. 814, 831 (1979). We add that the judge in vigorous

[3] Roth, however, recovered a judgment against Roux which was affirmed on appeal. *Roth* v. *Ray-Stel's Hair Stylists, Inc.,* 18 Mass. App. Ct. 975 (1984).

instructions warned that it was this, and no other case, that the jury had to decide. Evidence of the result in the Roth case was in effect no more than cumulative upon proof of the incidents of defective performance by Gentle Blonde and of the various complaints about the bleach received by Roux.[4]

*Order denying motion for new trial affirmed.*

*Judgments affirmed.*

---

[4] Roux's counsel had also made free to bring out that there was a lawsuit pending against Roux by Rita Jarvis Pandelena, a hairdresser who was called as a witness by Felipe. She testified to the inordinate swelling of Gentle Blonde when applied to her own hair by one of her employees.