# RESCRIPT OPINIONS.

GEORGE READ *vs.* MT. TOM SKI AREA, INC. No. 92-P-1284. July 26, 1994. *Evidence*, Relevancy and materiality, Expert opinion, Experiment, Judicial discretion. *Negligence*, Amusement ride, Operation of ski area.

George Read was injured while riding on a sled down a concrete track at the Mt. Tom Slide, an amusement ride at the Mt. Tom Ski Area (Mt. Tom) in Holyoke. Individual riders control the speed of their sleds by means of a brake. Ride attendants wait until each rider is out of sight (a distance of approximately 134 feet from the take-off point) before letting the next rider proceed. During his progress down the mountain, Read's sled was hit from behind by another rider. While his sled hurtled off the track, Read tried to hold onto the track, and his arm was run over by the other rider's sled. The other rider left the scene of the accident and has not been heard from again. Read brought an action against Mt. Tom, alleging that his injuries resulted from its negligent design, construction, maintenance, or operation of the ride. The case was tried to a jury which, upon special questions, answered that Mt. Tom neither negligently operated the ride nor negligently failed to warn Read of the danger.

On appeal, Read contests the trial judge's exclusion of: (1) accident reports about other accidents on the slide; and (2) his expert witness's proposed testimony regarding the potential for collisions on the slide.[1] We affirm.

1. *Exclusion of evidence of allegedly similar accidents.* The record indicates that Read attempted to submit accident reports, filled out in the nor-

---

[1] Read also argues that the judge erroneously instructed the jury that "[a]ny operator of an amusement area may reasonably assume that its facilities will be given normal uses by the patron[s] and used in a reasonable manner by anticipated patrons." Portions of the transcript have apparently been lost or destroyed, although the jury instructions and other portions relevant to Read's first two arguments have been submitted. Read contends that an objection to this jury instruction was made during a conference at side bar or in chambers. The trial judge, when requested, pursuant to Mass.R.A.P. 8(e), as amended, 378 Mass. 934 (1979), to set the record straight regarding those conferences, responded that he had "no specific memory of any specific objections" by either side to any instruction. Read's appellate brief notes that Mt. Tom "is unable to stipulate" that Read objected to this instruction, although both parties address the merits of the issue in their argument. As things stand, therefore, the record does not reflect an objection by Read to the instruction, *Bechtel* v. *Paul Clark, Inc.*, 10 Mass. App. Ct. 685, 691-694 (1980), and we decline to address the issue. *Karen Constr. Co.* v. *Lizotte*, 396 Mass. 143, 148-149 (1985).

mal course of Mt. Tom's business, to show that other rear-end collisions had occurred on the slide prior to Read's accident. The trial judge noted that three of the reports concerned accidents that occurred when patrons fell out of their sleds for reasons other than being hit from behind, and, thus, were irrelevant. Read made no offer of proof regarding other reports that may have been in his possession. No reports were marked for identification or submitted with the record on appeal. The judge did indicate that Read would be allowed to introduce evidence, through examination of David Moore, Mt. Tom's general manager, that Mt. Tom was on notice that rear-end collisions did occur on the slide. Moore testified that he was aware that more than one such collision had occurred prior to the date of Read's accident.

Appellate courts accord a trial judge substantial deference in determining whether evidence is legally relevant. *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984). It is within the judge's discretion to exclude evidence that, while relevant, presents the danger of "confusion, unfair prejudice, or undue consumption of time in trial of collateral issues" that outweighs the probative value of the evidence. *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982). See also *Robitaille* v. *Netoco Community Theatre of N. Attleboro, Inc.*, 305 Mass. 265, 267-268 (1940). Evidence that accidents similar to the plaintiff's have occurred at the same location generally is viewed with disfavor, precisely because the earlier mishap may have been the consequence of idiosynchratic circumstances (e.g., the weather, the physical conditon of the injured person, the light conditions) not present in the incident now the subject of trial. *Robitaille* v. *Netoco Community Theatre of N. Attleboro, Inc.*, 305 Mass. at 267-268. *Denton* v. *Park Hotel, Inc.*, 343 Mass. 524, 527 (1962). *Reil* v. *Lowell Gas Co.*, 353 Mass. 120, 135-136 (1967). *Croall* v. *Massachusetts Bay Transp. Authy.*, 26 Mass. App. Ct. 957, 959 (1988). Liacos, Massachusetts Evidence § 4.4.10 (6th ed. 1994). Such evidence is admissible to prove a defendant's knowledge of a dangerous condition only upon a showing, by its proponent, that the circumstances of the other accidents were "substantially identical" and the danger of confusion, undue waste of time, or unfairness appears small. *Robitaille* v. *Netoco Community Theatre of N. Attleoboro, Inc.*, 305 Mass. at 267. *Kromhout* v. *Commonwealth*, 398 Mass. 687, 693 (1986). *Croall* v. *Massachusetts Bay Transp. Authy.*, 26 Mass. App. Ct. at 959. That was not the case here, and the evidence was properly excluded.

2. *Exclusion of expert testimony.* At a voir dire examination, John Kwoznoski, Read's expert witness, proposed to testify about the results of certain tests he had conducted at the slide. Kwoznoski could not reconstruct the accident because he had no information (the speed of both sleds before the impact and at the time of impact, the distance between them when Read's sled was first sighted by the other rider, etc.) with which so to do. Instead, he attempted to determine what percentage of riders could

catch up with riders ahead of them. He determined that the distance from the take-off point to the point riders were out of sight of the ride attendant was 134 feet. The distance from the take-off point to the point at which Read's accident occurred was 694 feet. He timed fifteen riders and determined that it took a rider between 7.9 seconds and 14 seconds to reach the point at which they were out of sight (it will be recalled that this was the point at which the attendant would let another rider proceed). The disparity in the time it took to reach this point was due to each rider's ability to control his or her own speed. Kwoznoski also timed several other riders,[2] all male and all appearing to be in Read's general age group and weight, from the take-off point to the point of impact. Those riders did not proceed down the slide consecutively, as they were interspersed with women riders and men who did not approximate Read's age and height. Kwoznoski made no observations of the relative distances between consecutive riders as they came down the slide.

Based solely on the amount of time it took various members of his subject groups to reach the out-of-sight point or the point at which Read's accident occurred, Kwoznoski postulated that if a rider's departure from the take-off point was less than ten seconds after the previous rider's departure, there was a possibility that the second rider would catch up to the first. Assuming a ten-second interval between riders, his calculations showed that there was a twenty percent possibility of a collision. He could not say with certainty that increasing the time between departures would lessen the possibility of collision, although his calculations indicated that this was so. Kwoznoski's calculations did not, and could not, take into consideration the fact that riders are able to increase or decrease their speed at will. The trial judge ruled that Kwoznoski could testify about the measurements he made and the amount of time it might take for a rider to reach the point at which Read's accident occurred. He declined to admit testimony about the other timing factors or percentages of possible collisions because such information could mislead the jury.

"[T]he question whether evidence of experiments shall be admitted must be largely left to the discretion of the trial judge, and that discretion will not be interfered with unless in its exercise [the judge] clearly appears to be wrong." *Dow* v. *Bulfinch*, 192 Mass. 281, 285 (1906). *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 365 (1980). *Bechtel* v. *Paul Clark, Inc.*, 10 Mass. App. Ct. 685, 688 (1980), and cases and authorities there cited. As with evidence of other accidents similar to the plaintiff's, the admissibility of experimental evidence is subject to the trial judge's determination that its probative value outweighs the possibility that it will mislead or

---

[2] At times Kwoznoski testified that this second group of riders comprised 125 persons. Elsewhere in his testimony it appears that the group consisted of only twenty-five persons. Kwoznoski testified that nineteen of the twenty-five were riding on the "experienced," or faster track. Read was riding on the "inexperienced," or slower track, at the time of his accident.

prejudice the jury. *Bechtel* v. *Paul Clark, Inc., supra* at 688. A prime consideration is whether the experiment was conducted under conditions substantially similar to those which gave rise to the plaintiff's accident, so that the jury can infer "something material" about the cause of the plaintiff's accident. *Sacks* v. *Roux Labs., Inc.,* 25 Mass. App. Ct. 672, 675 (1988). *Welch* v. *Keene Corp.,* 31 Mass. App. Ct. 157, 166 (1991). "The determination whether the conditions were sufficiently similar to make the experiment of any value in aiding the jury is a matter resting in the sound discretion of the judge." *Griffin* v. *General Motors Corp.,* 380 Mass. at 365-366. *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 173 (1983). There was no abuse of discretion in excluding experimental evidence when the expert who conducted the experiment testified that he had no information about the actual conditions that existed at the place and time of the plaintiff's accident.

*Judgment affirmed.*

The case was submitted on briefs.
*Thomas A. Miranda* for the plaintiff.
*Paul F. Schneider* for the defendant.