LILLIAN WICKIZER AND HAROLD WICKIZER *v.*
MORRIS L. MEDLEY.

[No. 3-574A86. Filed June 7, 1976. Rehearing denied July 28, 1976.
Transfer denied October 20, 1976.]

*Charles E. Herriman, Gemmill, Brown, Torrance, Spitzer & Herriman,* of Marion, *Leon R. Kaminski, Newby, Lewis, Kaminski & Jones,* of LaPorte, for appellants.

*Winfield L. Bouran, Larry G. Evans, John E. Hughes, Chester, Clifford, Hoeppner & Houran,* of Valparaiso, for appellee.

STATON, P.J.—Lillian Wickizer was injured on March 29, 1969, when the car she was driving was struck from the rear by a vehicle driven by Morris Medley. A jury awarded damages of $5,600.00 to Lillian and $4,400.00 to her husband, Harold. On appeal, Lillian contends that the damages awarded to her are inadequate and that the court erred when it gave an instruction on the income tax consequences of an award of damages.

We conclude that the damages are not inadequate and that any error in giving the objectionable instruction was harmless. We affirm.

## I.

### Damages

In *Rondinelli* v. *Bowden* (1973), 155 Ind.App. 582, 293 N.E.2d 812, 814, this Court stated:

"To determine if the verdict is inadequate the same rules must be applied as if the verdict were being challenged as

excessive. In Henschen v. New York Cent. R. Co. (1945), 223 Ind. 393, at 399, 400, 60 N.E.2d 738, at 740, it is stated:

'Aside from cases where damages are a mere matter of computation this court will reverse a cause for exececssive damages only where, after examining the evidence concerning the injuries, it is apparent that the amount of damages assessed by the jury is so large as to indicate that the jury in assessing the amount was motivated by prejudice, passion, partiality or corruption, or considered some improper element. (Citing authorities.) * * *

'In a case of this kind the extent of the compensation is largely a jury question and does not admit of fixed rules and mathematical precision.' "

*See also Green* v. *Oakley* (1969), 145 Ind.App. 307, 250 N.E.2d 594; *Schutz* v. *Rose* (1964), 136 Ind.App. 165, 196 N.E.2d 285.

In the present case, the amount of damages assessed by the jury is not so small as to suggest that the jury was "motivated by prejudice, passion, partiality or corruption, or considered some improper element." *Compare Thompson* v. *Town of Fort Branch* (1931), 204 Ind. 152, 178 N.E. 440 (award of $1.00 damages for wrongful death), *with Schutz* v. *Rose* (1964), 136 Ind.App. 165, 196 N.E.2d 285 (no damages awarded for personal injuries).

Lillian was 44 years old at the time of the accident. Since October 14, 1955, she had been employed by the Elgin, Joliet, and Eastern Railway Company as an IBM clerk. Lillian did not work between the date of the accident and the time of the trial (October 15, 1973). The undisputed evidence showed that Lillian's lost earnings, depending on rate classifications and overtime, amounted to between $39,000.00 and $44,000.00. Lillian contends that, in light of the evidence of lost earnings, the award of $5,600.00 is clearly inadequate.

The evidence presented is conflicting as to the nature, extent, and source of Lillian's disability and as to the reason for her inability to work after the accident. Dr. Cooper, who examined Lillian on May 14, 1970, on behalf of the railway

retirement board, testified that he found no "gross evidence of a physical impairment, disability" and "no loss of function of this patient." He felt that she needed no further treatment other than the "assurance that she could get along fine." Dr. Cohen, who examined Lillian on May 10, 1973, on behalf of defendant Medley, testified that he found "no objective neurological deficit" and no disability as a result of injury to her back and neck. There is evidence that Lillian had a history of absence from work. She took leaves of absence because of illness of over two months in 1959, over four months in 1960, over one month in 1963, over five months in 1964, and three months in 1965.

Between the time of the accident and the time of trial, Lillian was examined and treated by seven other doctors and was hospitalized for tests on three occasions. At various times, she complained of neck, back, shoulder, and leg pains, numbness of the extremities, headaches, ringing in the ears, dizziness, hypertension, high blood pressure, and nervousness. Dr. Phillips, who treated Lillian immediately after the accident, diagnosed that, as a result of the accident, she suffered acute and chronic sprain of the cervical spine. Dr. Speigel, who examined Lillian in October 1971, diagnosed "sprain of the cervical spine . . . and a sprain of the lumbosacral spine secondary to [caused by] the incident of injury which she alleged on the 29th of March, '69, . . . and superimposed upon a previously existing state of spondylosis [degenerative osteoarthritis] of the lumbosacral spine." Other than evidence of spasm in the lower back muscles, found only by Dr. Speigel, the diagnoses were made on the basis of Lillian's subjective complaints of pain and tenderness which are impossible of objective confirmation. Although the doctors agreed that Lillian was probably not a "phony" or a "malingerer," there is evidence that a clever person could control movement and flexion so as to indicate real pain.

After the accident, Lillian was also treated for bronchitis, chest pain, and tachycardia or rapid heartbeat. There is

evidence that in 1970 Lillian was suffering from arteriosclerosis so severe that a physician had recommended a serious bypass operation. There is evidence that many of Lillian's subjective complaints, and a portion of her disability, could have been a result of arteriosclerosis.

The jury saw the witnesses, including the plaintiff Lillian Wickizer, and was in the best position to determine their credibility. The question of the damages required to compensate Lillian for the pain and suffering, mental anguish, and disability she suffered as a result of the accident was peculiarly a question for the jury. The question of whether the undisputed period of time during which she was absent from work was a proximate result of the automobile collision was also peculiarly a question for the jury. *See Cox* v. *Winklepleck* (1971), 149 Ind.App. 319, 271 N.E.2d 737; *Niemeyer* v. *Lee* (1969), 144 Ind.App. 161, 245 N.E.2d 178. We may not reweigh the evidence or reassess the credibility of the witnesses. In light of the conflicting evidence as to the nature, source, and extent of Lillian's injuries and complaints, we must conclude that the jury's award of damages was not so inadequate as to indicate passion, prejudice, or impropriety.

## II.

### Instructions

The trial court gave Defendant's Instruction Number Six to the jury:

"I instruct you that any award made to the plaintiffs in this case, if any is made, is not income to the plaintiffs within the meaning of the Federal Income Tax Law. Should you find that plaintiffs are entitled to an award of damages, then you are to follow the instructions already given to you by this court in measuring those damages and in no event should you either add to or subtract from that award on account of Federal Income Taxes."

In *Highshew* v. *Kushto* (1956), 235 Ind. 505, 507-08, 134 N.E.2d 555, 556 (on petition to transfer), the Indiana Su-

preme Court expressly disapproved an instruction regarding the income tax consequences of an award of damages:

> "Inquiries at a trial into the incidents of taxation in damage suits of the character we have here, would open up broad and new matters not pertinent to the issues involved. Such subject matter would involve intricate instructions on tax and non-tax liabilities with all the regulations pertinent thereto. No court could, with any certainty, properly instruct a jury without a tax expert at its side. In our judgment such matters are not a proper subject for instruction or argument of counsel."

In *Highshew*, the Court affirmed the trial court's refusal to give the instruction. See also *Richmond Gas Corp.* v. *Reeves* (1973), 158 Ind.App. 338, 302 N.E.2d 795. In the present case, the trial court gave the instruction, and the question is whether this error is reversible error. We conclude that it is not, under the facts and circumstances of the case before us.

In *Drolet* v. *Pennsylvania R.R.* (1960), 130 Ind.App. 549, 555, 164 N.E.2d 555, 558, the Court stated:

> " 'If the instructions considered as a whole fully and fairly instruct the jury, error in any particular instruction will not justify a reversal unless it is such as to vitiate the whole charge to the jury. The charge is vitiated only when the instruction is so erroneous that it must be concluded the jurors have been misled as to the law of the case. *Stull* v. *Davidson* (1955), 125 Ind.App. 565, 127 N.E.2d 130,' Flanagan, Wiltrout & Hamilton's *Indiana Trial & Appellate Practice*, § 1510, p. 62, par. 6 of Supp."

In the present case, the jury was instructed that, if it found that plaintiffs were entitled to recover, it should award "fair and adequate compensation" for physical pain and suffering, disability of body function, mental suffering, lost earnings, and impairment of earning capacity. The jury was instructed that its verdict should be based on the evidence and "not on guess or speculation." In Defendant's Instruction Number Six, the court cautioned the jury "to follow the instructions already given . . . in measuring . . . damages."

Clearly, an instruction regarding the income tax conse-

quences of an award of damages can have two meanings. The *Highshew* Court recognized this when it quoted the following from the case of *Maus* v. *New York, C. & St. L. R.R.* (1955), Ohio App., 128 N.E.2d 166, 167:

> " 'To permit an instruction, as requested herein, there should be an inquiry as to the amount allowed for actual loss of wages plus probable future loss of earnings, for, as to those matters, the injured person, if he had not been injured and had he continued to work, would have paid income taxes on all of his earnings. On the amount awarded for pain, suffering and mental anguish, no reasonable person would expect to pay or be assessed for income taxes.' " 235 Ind. at 507, 134 N.E.2d at 556.

In the sense that the instruction might have affected the jury's award of damages for pain and suffering, disability, or mental anguish, neither Lillian nor Harold have shown any prejudice. Lillian and Harold were entitled to recover fair compensation for injuries and losses caused by Medley's negligence. They were not entitled to an inflated award based upon the jury's mistaken belief that a portion of the verdict would be used to pay taxes on the amount recovered. The instruction given, in conjunction with the other instructions, merely served to caution the jury to base its award on the evidence, and not on speculation about tax consequences.

In the sense that the instruction might have affected the jury's award of damages for lost earnings or impairment of earning capacity, we also find no prejudice to plaintiffs. The jury was instructed not to "add to or subtract from [its] . . . award on account of Federal Income Taxes." The evidence introduced regarding Lillian's lost earnings established Lillian's lost gross earnings. The instruction given, in light of the other instructions in the case, again served to caution the jury to base its award on the evidence, and not on speculation about income taxes which Lillian might have paid had she earned the income. Lillian could not have been prejudiced by this instruction.

We conclude that the error in giving the instruction about

the income tax consequences of an award of damages did not vitiate the whole charge to the jury and was harmless under the facts and circumstances of the present case.

We affirm.

Hoffman, J. and Garrard, J., concur.

NOTE.—Reported at 348 N.E.2d at 96.