Myrna SELBY; and Sumner
Selby, Plaintiffs,

v.

Donald R. LOVECAMP, Defendant.

Civ. No. L 87–2.

United States District Court,
N.D. Indiana,
Hammond at Lafayette Division.

July 18, 1988.

Earl C. Townsend, Jr., Indianapolis, Ind.,
John R. Gambs, Lafayette, Ind., for plaintiffs.

James D. Witchger, Indianapolis, Ind.,
for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case was tried to a jury by able and very experienced counsel. On February 19, 1988, the jury returned a verdict in favor of the plaintiff, Myrna Selby, in the sum of $20,000.00, and in favor of the plaintiff, Sumner Selby, in the sum of $1,000.00. Judgment was entered on the jury verdict, and costs were assessed against the defendant, Donald R. Lovecamp. On February 23, 1988, the plaintiffs filed a motion for a new trial together with supporting memoranda, which raises as the sole and single issue whether this court committed reversible error when it gave its final instruction number 20, which reads as follows:

> You are instructed that if you find for the Plaintiffs, it is your duty to fix the amount of damages which the Plaintiffs are entitled to recover, if any, and the recovery allowed should be such an amount as will compensate the Plaintiffs reasonably for all the damages suffered by the Plaintiffs which were a proximate result of the Defendant's negligence. You are instructed that any such award by you in favor of the Plaintiffs will not be subject to Federal Income Tax.

A response and brief was filed by defendants on May 31, 1988. This court first set the same for oral argument on May 17, 1988, which was later continued to June 28, 1988. Thereafter, counsel for the plaintiff indicated that he would not be available for such argument until the fall of 1988. Since the issue has now been fully briefed, the court does not conceive that oral argument would be helpful. Thus, the court will rule without oral argument in the interest of an expeditious resolution of this remaining issue. For reasons set forth below, plaintiffs' motion is DENIED.

It is correct here that the substantive law of Indiana applies in this case based on diversity of citizenship under 28 U.S.C. § 1332 and *Erie Railroad v. Tompkins,*

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is also true that there remains in the Internal Revenue Code a provision comparable to that found in § 104(a)(2) of the Internal Revenue Code of 1954, 26 U.S.C. § 104(a)(2), which provides that the amount of any damages received on account of personal injuries is not taxable income. See also Rev.Rul. 54–19, 1954–1 Cum. Bul.179 (applying this section to wrongful-death awards).

In Indiana, the traditional rule is that the instruction that damage awards are not subject to income tax should not be given. Thirty-two years ago, the Supreme Court of Indiana, speaking through Judge Arterbern in *Highshew v. Kushto,* 235 Ind. 505, 134 N.E.2d 555 (1956) at page 556, stated:

"Inquiries at a trial into the incidence of taxation in damage suits of the character we have here, would open up broad and new matters not pertinent to the issues involved. Such subject matter would involve intricate instructions on tax and non-tax liabilities with all the regulations pertaining thereto. No court could, with any certainty, properly instruct a jury without a tax expert at its side. In our judgment, such matters are not a proper subject for instruction or argument of counsel."

In *Richmond Gas Corp. v. Reeves,* 158 Ind.App. 338, 302 N.E.2d 795, 811 (1973), Judge Lybrook, speaking for the Court of Appeals of Indiana, dealt with the refusal to give the following instruction:

You are instructed that any award made to the plaintiffs as damages in this case, if any is made, is not subject to federal or state income tax, and you should not consider such taxes in fixing any award made to the plaintiffs.

Judge Lybrook cited 63 ALR 2d 1393, 1425 in dictating what he described as a "fairly even split of opinion on this issue." [1] He bottomed his decision that the refusal to give the aforesaid instruction was not reversible error on the *Highshew* case.

A third Indiana case, and the one which is most relevant for these purposes, was decided in 1976. Surprisingly, it did not appear in either party's brief. In *Wickizer v. Medley,* 169 Ind.App. 332, 348 N.E.2d 96, Judge Staton of the Third District Indiana Court of Appeals found that though it was error under *Highshew* and *Richmond Gas* to instruct the jury about income tax consequences of an award of damages, in that particular case the error was harmless. The *Wickizer* facts were virtually identical to the facts here. A woman, Lillian Wickizer was driving an automobile which was struck from behind by defendant Morris Medley. She and her husband sued Medley for damages. The trial court instruction to the jury regarding damages was:

"I instruct you that any award made to the plaintiffs in this case, if any is made, is not income to the plaintiffs within the meaning of the Federal Income Tax Law. Should you find that plaintiffs are entitled to an award of damages, then you are to follow the instructions already given to you by this court in measuring those damages and in no event should you either add to or subtract from that award on account of Federal Income Taxes."

The jury awarded Mrs. Wickizer $5,600.00 and her husband $4,400.00. The Wickizers appealed the jury award, contending that the damages were inadequate and that the court erred when it gave an instruction on the income tax consequences of an award of damages. The appellate court found that the damages were not inadequate because they were "not so small as to suggest that the jury was motivated by prejudice, passion, partiality or corruption, or [that the jury] considered some improper element." *Wickizer,* 348 N.E.2d at 97 *citing Henschen v. New York Cent. R. Co.,* 223 Ind. 393, 399–400, 60 N.E.2d 738, 740 (1945). The court then concluded that the instruction was harmless error, basing its decision on *Drolet v. Pennsylvania R.R.,* 130 Ind.App. 549, 164 N.E.2d 555 (1960), which stated:

---

**1.** The most recent, updated version of this annotation, found at 16 A.L.R. 4th 590–621, indicates

that the courts continue to split on this issue.

If the instructions considered as a whole fully and fairly instruct the jury, error in any particular instruction will not justify a reversal unless it is such as to vitiate the whole charge to the jury. The charge is vitiated only when the instruction is so erroneous that it must be concluded the jurors have been misled as to the law of the case.

*Drolet,* 164 N.E.2d at 558 (citations omitted). Employing the *Drolet* standard, the *Wickizer* court found that the instruction given, in light of the other instructions in the case, merely served to caution the jury to base its award on the evidence and not on speculation about possible income tax consequences. Contrary to being misleading, the instruction actually clarified the damages award issue. After all, the court pointed out, plaintiffs "were not entitled to an inflated award based upon the jury's mistaken belief that a portion of the verdict would be used to pay taxes on the amount recovered." *Wickizer,* 348 N.E.2d at 100.

Reading between the lines of *Wickizer,* one wonders whether a scenario exists, where, if all the other instructions are proper, the giving of an income tax consequences instruction would *ever* be reversible error in Indiana. Indeed, after reading Judge Staton's opinion, one is convinced that the instruction is certainly valuable, if not necessary. Still, Indiana remains one of many states in which the instruction is not to be given.

There are, however, recent federal cases which indicate a trend toward instructing jurors on income tax consequences. In 1980, the Supreme Court of the United States addressed the issue in a FELA case, *Norfolk and Western Railway Company v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689. Justice Stevens, speaking for the court first dealt with the admissibility of evidence of the tax consequences on lost future income:

In a wrongful-death action under the FELA, the measure of recovery is "the damages ... [that] flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received ..." *Michigan Central R. Co.*

*v. Vreeland, supra,* 227 U.S. [59] at 70, 33 S.Ct. [192] at 196 [57 L.Ed. 417 (1913)]. The amount of money that a wage earner is able to contribute to the support of his family is unquestionably affected by the amount of the tax he must pay to the Federal Government. It is his after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family. It follows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies.

Although federal courts have consistently received evidence of the amount of the decedent's personal expenditures, see, *e.g., Kansas City S.R. Co. v. Leslie,* 238 U.S. 599, 604, 35 S.Ct. 844, 846, 59 L.Ed. 1478 and have required that the estimate of future earnings be reduced by "taking account of the earning power of the money that is presently to be awarded," *Chesapeake & Ohio R. Co. v. Kelly, supra,* 241 U.S., [485] at 489, 36 S.Ct., [630] at 632 [69 L.Ed. 1117 (1916)], they have generally not considered the payment of income taxes as tantamount to a personal expenditure and have regarded the future prediction of tax consequences as too speculative and complex for a jury's deliberations. *See, e.g., Johnson v. Penrod Drilling Co.,* 510 F.2d 234, 236–237 (CA5 1975), cert. denied, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58.

Admittedly there are many variables that may affect the amount of a wage earner's future income-tax liability. The law may change, his family may increase or decrease in size, his spouse's earnings may affect his tax bracket, and extra income or unforeseen deductions may become available. But future employment itself, future health, future personal expenditures, future interest rates, and future inflation are also matters of estimate and prediction. Any one of these issues might provide the basis for protracted expert testimony and debate. But the practical wisdom of the trial bar and the trial bench has developed effec-

tive methods of presenting the essential elements of an expert calculation in a form that is understandable by juries that are increasingly familiar with the complexities of modern life. We therefore reject the notion that the introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury.

Respondent argues that if this door is opened, other equally relevant evidence must also be received. For example, she points out that in discounting the estimate of future earnings to its present value, the tax on the income to be earned by the damages award is now omitted. Logically, it would certainly seem correct that this amount, like future wages, should be estimated on an after-tax basis. But the fact that such an after-tax estimate, if offered in proper form, would also be admissible does not persuade us that it is wrong to use after-tax figures instead of gross earnings in projecting what the decedent's financial contributions to his survivors would have been had this tragic accident not occurred.

Respondent also argues that evidence concerning costs of litigation, including her attorney's fees, is equally pertinent to a determination of what amount will actually compensate the survivors for their monetary loss. In a sense this is, of course, true. But the argument that attorney's fees must be added to a plaintiff's recovery if the award is truly to make him whole is contrary to the generally applicable "American Rule." See *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141. The FELA, however, unlike a number of other federal statutes, does not authorize recovery

of attorney's fees by the successful litigant. Only if the Congress were to provide for such a recovery would it be proper to consider them. In any event, it surely is not proper for the Judiciary to ignore the demonstrably relevant factor of income tax in measuring damages in order to offset what may be perceived as an undesirable or unfair rule regarding attorney's fees.

*Id.* at 493–496, 100 S.Ct. at 757–58. The admissibility of the income tax consequences on future earnings and an instruction dealing with the nontaxability of damages awarded in a personal injury suit should not necessarily be considered relevant to one another. Arguably, the latter is much more palatable as it is simple, clear and non-speculative.[2] Justice Stevens also approved that type of instruction:

It is surely not fanciful to suppose that the jury erroneously believed that a large portion of the award would be payable to the Federal Government in taxes, and that therefore it improperly inflated the recovery. Whether or not this speculation is accurate, we agree with petitioner that, as Judge Ely wrote for the Ninth Circuit,

"[t]o put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus overcompensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable." *Burlington Northern, Inc. v. Boxberger,* 529 F.2d 284, 297 (1975).

We hold that it was error to refuse the requested instruction in this case. That instruction was brief and could be easily understood. It would not complicate the trial by making additional qualifying or supplemental instructions necessary. It

---

**2.** The Court of Appeals for the Third Circuit, speaking through Judge Aldisert in *Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245 (3rd Cir.1971), at page 1251 stated:

The instruction requested in this case would not require the introduction of any additional evidence. No reference to any IRS regulation or to any specific statute would be necessary. No tax expert would need be summoned as a witness. No tax tables would be hauled into

the courtroom. No additional computation would be required. In brief, such an instruction would not open the trial to matters irrelevant to traditional issues in personal injury litigation, and thus would in no way complicate the case or confuse the jury.

Judge Aldisert also noted that the *Highshew* court had confused the evidentiary issue of tax on lost wages with the question of a cautionary instruction. *Id.* at 1250.

would not be prejudicial to either party, but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages.

*Id.* at 497–98, 100 S.Ct. at 759–60.

The Supreme Court of the United States therefore created the federal common law rule that it is error to refuse a tax consequences instruction. Although the *Liepelt* decision was based on FELA issues, the reasoning of that decision has been extended by some courts well beyond the limits of FELA litigation. *See, e.g., In re Air Crash Disaster Near Chicago, May 25, 1979,* 803 F.2d 304 (7th Cir.1986); *Grant v. City of Duluth,* 672 F.2d 677 (8th Cir.1982).

The Seventh Circuit recently had the opportunity to apply the new federal common rule of *Liepelt* in *In re Air Crash Disaster Near Chicago, May 25, 1979,* 803 F.2d 304 (7th Cir.1986). In that case, Judge Eschbach discussed the choice between federal common law and state law:

> In particular, we have previously addressed the choice between federal and state law as to whether the jury should be instructed that its award is tax exempt. *See In re Air Crash I,* 701 F.2d 1189 at 1199–1200 (7th Cir.1983). In that case, a nontaxability instruction was required by federal common law, but was barred by Illinois law. We held that federal law should be applied unless Illinois had a substantive interest for refusing the instruction. The Illinois Supreme Court had articulated three grounds for not giving the instruction: It would deprive the plaintiff of a tax benefit intended by Congress; it is unnecessary if the jury instructed on the proper measure of damages; and it would invite a flood of cautionary instructions. *See Hall v. Chicago & North Western Railway,* 5 Ill.2d 135, 148–53, 125 N.E.2d 77, 84–86 (1955); *see also Klawonn v. Mitchell,* 105 Ill.2d 450, 86 Ill.Dec. 478, 475 N.E.2d 857 (1985) (reaffirming state practice of refusing nontaxability instruction). We found that the first reason was incorrect as a matter of federal law because the Supreme Court had held

that Congress, by excluding personal injury awards from taxable income, did not intend to confer a tax benefit upon plaintiffs. *See Liepelt,* 444 U.S. at 496 n. 10, 100 S.Ct. at 759 n. 10. We concluded that the other two interests articulated by the Illinois Supreme Court "should not bind a federal court because they speak to matters of court administration, about which the federal courts have independent competence." *In re Air Crash I,* 701 F.2d at 1200. Hence, we held that, since Illinois did not have a substantive reason for refusing the instruction, federal law should apply.

Therefore, to determine whether state or federal law should be applied in this case, we must examine the grounds for refusing the instruction that have been expressed by the Arizona courts. The Arizona Supreme Court also has asserted three reasons: the instruction would complicate the trial; it is unnecessary if the jury is instructed on the proper measure of damages; and it would invite a flood of cautionary instructions. *See Mitchell,* 80 Ariz. 398 at 403–05, 298 P.2d 1034 at 1037–38 (1956). As was true of the latter interests articulated by the Illinois Supreme Court in *Hall,* the reasons expressed by the Arizona Supreme Court in *Mitchell* are merely procedural. By refusing the nontaxability instruction, Arizona simply seeks to regulate the internal procedure of its courts; it does not seek to regulate primary conduct of its citizens or to favor a particular class of litigants. *See* Redish & Phillips, *91 Harv.L.Rev.* at *394–400 (state interest in regulating its docket is entitled to less weight than an interest in regulating primary conduct or favoring a class of litigants). Since Arizona has not articulated a substantive interest for not giving the instruction, federal law should apply.*

We therefore hold that in this diversity case governed by Arizona law the jury should be instructed its award will not be subject to federal income taxation. To do otherwise would deny effect to the substantive federal interest for giving

the instruction, *viz.*, preventing the jury from inflating its award.

Under the Seventh Circuit's analysis then, this court must examine the reasons behind the Indiana rule which disallows the tax consequence instruction, to determine whether the reasons behind that rule are procedural or substantive. In *Highshew,* the court's articulated reasons concerned perceived problems of "intricate instructions" and the need for a "tax expert." This line of reasoning clearly "speak(s) to matters of court administration, about which the federal courts have independent competence." *In re Air Crash,* at 315. This court's own circuit therefore requires it to find that, under federal common law, the Indiana rule must be disregarded in a federal diversity action in light of *Liepelt.*

An Eighth Circuit case also supports this court's use of the instruction. In *Grant v. City of Duluth,* 672 F.2d 677 (1982), the court discussed *Liepelt:*

> Frankly, we favor the policy considerations behind the Supreme Court's decision in [*Liepelt*]. They may even be compelled by the requirements of due process of law, though we decline to so rule at this time. *The district court should give the requested instruction for cases in federal court in the absence of a state decision to the contrary issued after* [*Liepelt*]. (emphasis added)

*Id.* at 683. This holding was based on the assumption that the State would change its own law after *Liepelt. Adams v. Fuqua Industries, Inc.,* 820 F.2d 271, 277 (8th Cir.1987). This court could make the same assumption as the last Indiana case on the subject was *Wickizer,* decided in 1976, four years before *Liepelt.*

Clearly, this court did not commit reversible error by giving the instruction. This is true, in view of the *Wickizer* case, even under Indiana law which traditionally has not permitted the instruction. An additional fact is of some importance in this record. The plaintiff herself placed before the jury the issue of paying her federal income taxes. Therefore, she should not complain that this court included a tax instruction.

The policy considerations involved in this case also support this court's conclusion. As defendant points out in his brief, the plaintiffs have not alleged that the damages were inadequate. They have motioned for a new trial based on the sole issue that the court committed reversible error by giving the instruction. The question is what do the plaintiffs hope to accomplish by a new trial for damages minus the income tax instruction? It appears that they seek a windfall verdict based upon a jury's erroneous assumption that the plaintiffs may have to pay income tax on the award. Defendant correctly points out that this misconception is exactly what the Supreme Court of the United States declared should be avoided in *Liepelt.*

This court has found that, under Indiana law, no reversible error was committed by giving the instruction on the nontaxability of an award of damages in a personal injury case. This court must go one step further now and find that there was no error committed at all by giving the instruction. This court is bound to follow Seventh Circuit precedent. Therefore, under *In re Air Crash Disaster,* this court now finds that the Indiana Supreme Court's reasoning in *Highshew* for not giving a tax consequences instruction was purely procedural in nature as it related to matters of court administration. Consequently, this court must look to the federal common law created in *Liepelt* which would allow the instruction.

The long and short of all of this is that, under a Seventh Circuit analysis, there was no error in the first place. Therefore, plaintiffs' motion for a new trial on this sole and single issue must now be respectfully DENIED. IT IS SO ORDERED.