EILEEN GRIFFIN *vs.* GENERAL MOTORS CORPORATION.

Middlesex. January 7, 1980. — April 11, 1980.

Present: QUIRICO, BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Negligence*, Manufacturer of motor vehicle. *Evidence*, Experiment. *Damages*, Tort, Future earning capacity, Interest, Jury instructions respecting tax consequences, Remittitur.

At the trial of a negligence action against the manufacturer of an automobile by a plaintiff who was severely burned when her car was engulfed in flames as she attempted to light a cigarette, expert testimony with respect to alleged design defects which might have caused a fuel leak was properly admitted even though the plaintiff did not argue the defendant's negligence with respect to the fuel leak where the testimony was relevant as a possible explanation for the source of the fire. [364-365]

At the trial of a negligence action against an automobile manufacturer by a plaintiff who was severely burned when her car was engulfed in flames as she attempted to light a cigarette, the judge did not abuse his discretion in admitting evidence of a test using ammonia rather than gasoline to rebut the defendant's theory that it was not possible for fumes from the engine compartment to enter the passenger compartment. [365-366]

In an action for personal injuries suffered by the plaintiff, the judge did not err in permitting the jury to consider for purposes of damages the impairment of the plaintiff's future earning capacity where the evidence warranted an inference that the plaintiff's loss of function would increase in the future and that her earning capacity would be diminished. [366]

In an action to recover damages for personal injuries, the judge's instructions with respect to interest were not prejudicial to the defendant. [366-367]

Discussion of the propriety of an instruction with respect to income taxation on the amount of a verdict in a personal injury case. [367-370]

In an action to recover damages for personal injuries, there was sufficient evidence to support a verdict of $1,000,000 for the plaintiff. [370-371]

TORT. Writ in the Superior Court dated November 18, 1970.

The action was tried before *Hallisey,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Charles F. Barrett (Patrick F. Brady* with him) for the defendant.

*Paul R. Sugarman (W. Thomas Smith* with him) for the plaintiff.

BRAUCHER, J.  The plaintiff's automobile, manufactured by the defendant, caught fire while she was driving it, and she was severely burned.  On a theory of negligent design, a jury has awarded her $1,000,000 in damages, and judgment has been entered for that amount plus $574,500 in statutory interest.  The defendant's appeal presents evidentiary issues, issues with respect to the instructions to the jury, and a claim that the damages awarded are excessive.  The judge refused to instruct the jury that an award of damages would be exempt from income taxation, and the plaintiff applied for direct appellate review, asserting that the refusal presented an issue of first impression in the Commonwealth. We allowed the application, and we now affirm the judgment.

The plaintiff bought the automobile, a 1969 Buick Skylark convertible, in June, 1969.  The fire occurred July 11, 1970, and the plaintiff entered her civil action February 1, 1971, against the defendant and two Buick dealers.  The case was tried in February, 1979, and verdicts were directed in favor of the two codefendants.

The plaintiff testified that she was traveling at forty to forty-five miles an hour with the convertible top and windows closed.  The two upper fresh air vents on the dashboard were open; the two lower vents under the dashboard were closed.  She decided to smoke a cigarette, reached into her pocketbook, and took out a cigarette and her butane lighter.  With her left hand she opened the left lower air vent, and immediately smelled gasoline.  At almost the same time she activated her lighter, and the car was immediately engulfed in flames.  In ten to fifteen seconds she stopped the car, opened the door and fell out.  A passerby took her to a hospital.

The plaintiff's experts testified that the negligent design of the hood and fresh air system permitted fumes from a gasoline leak in the engine compartment to enter the passenger compartment, and that those fumes were ignited when the plaintiff activated her lighter. The resulting flames flashed back to the source of the fumes in the engine compartment and then burned with high intensity through the vent she had opened. The defendant's expert testified that gasoline fumes could not travel from the engine compartment into the passenger compartment, and that the fire was caused by butane fumes rather than gasoline fumes and was fed by something in the passenger compartment.

1. *Fuel leak testimony.* In his opening statement, the plaintiff's counsel described three alleged design defects that might have caused a fuel leak. Over the defendant's objection, one of the plaintiff's experts gave detailed testimony as to each of the three. The defendant's motions to strike that testimony were denied. After the close of evidence, the plaintiff's counsel informed the judge at a lobby conference that he would not argue to the jury the defendant's negligence with respect to a fuel leak. The judge then instructed the jury that "it appears now that the single charge of negligent design or manufacture that will be argued to you tomorrow morning is in the design and construction of the hood and the air system, the fresh air system; that the other things you heard about may be argued to you as a possible source of flames, but the focus of fault will be on the hood and the fresh air system, and their design combination, juxtaposition, inter-relationship."

The defendant requested a charge that the jury could not base a finding for the plaintiff on the defendant's alleged negligence causing a gasoline leak. The judge did not give the requested charge. Instead, he told the jury the following: "Plaintiff has not argued that the design or construction of the fuel system was negligence. It comes in only as a possible explanation for the source of the fire. The sole ground of negligence that the plaintiff is charging is the design and/or construction of the hood and the fresh air system."

There was no error. The defendant's motion to strike the expert testimony was overbroad, since it was relevant, as the judge pointed out, to supply possible explanations for the fuel leak and the flames. See *Bryer* v. *P.S. Thorsen Co.,* 327 Mass. 684, 687 (1951). The instructions given by the judge covered the substance of the defendant's request. See *Commonwealth* v. *Aronson,* 330 Mass. 453, 458 (1953).

2. *The ammonia test.* The plaintiff's experts conducted a test of a 1969 Buick Skylark in preparation for trial. Household ammonia was poured on top of the air filter cover, and the vehicle was accelerated to thirty miles an hour with windows closed, heater and fan off, and air vents closed. At thirty miles an hour, the upper vents were opened, and one of the experts detected only a faint odor of ammonia. The vehicle was then accelerated to forty-five miles an hour, and the lower vent was opened. The same expert then detected a very strong odor of ammonia, and concluded that the atmosphere from under the hood did get into the driver's compartment.

When evidence of the test was first offered, the judge excluded it. Later, however, the defendant's expert testified that it was not possible for fumes from the engine compartment to enter the fresh air system. He also testified to a somewhat similar test conducted by him, using gasoline instead of ammonia. The judge then admitted evidence of the ammonia test by way of rebuttal, over the defendant's objection that the test conditions were not sufficiently similar to the litigated happening to be of assistance to the jury.

Evidence of the ammonia test was relevant to contradict the defendant's theory that it was not possible for fumes from the engine compartment to enter the passenger compartment. See *McCarthy* v. *Curry,* 240 Mass. 442, 444 (1922). Whether testimony as to experiments shall be admitted must be largely left to the discretion of the trial judge, and that discretion will not be interfered with unless in its exercise he clearly appears to be wrong. The determination whether the conditions were sufficiently similar to

make the experiment of any value in aiding the jury is a matter resting in the sound discretion of the judge. *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 592-593 (1956), and cases cited. There is no dispute that the test vehicle was similar to the plaintiff's, and the plaintiff's expert testified that the use of ammonia instead of gasoline did not affect the validity of the test. There was no abuse of discretion.

3. *Future earning capacity.* The judge instructed the jury that the plaintiff was "entitled to her past and future impaired earning capacity." The defendant objected to that instruction and to the judge's refusal to instruct the jury that there was no evidence of any future impairment. There was no error.

The plaintiff was unable to work from July 12, 1970, to March 29, 1971. Since then, she testified, she has been employed as a legal secretary, and has been able to do her work. Her doctor testified that she had a loss of function of 45% in her left hand, 25% in her right hand, and 30% in her knee joints, and that she suffered persistent pain in her fingers and knees during cold weather, with particular trouble with cracks and fissures in the skin over the joints and the backs of her hands. In his opinion, there was a probability of the development of a traumatic form of arthritis in some or all of these joints.

The assessment of damages for impairment of earning capacity rests largely on the common knowledge of the jury, sometimes with little aid from evidence. *Doherty* v. *Ruiz*, 302 Mass. 145, 147 (1939). *Cross* v. *Sharaffa*, 281 Mass. 329, 331-332 (1933). The evidence warranted an inference that the plaintiff's loss of function would increase in the future, and that her earning capacity would be diminished. As the judge said to counsel, "I think it is susceptible of common knowledge that with the massive scars that she has that her future opportunities for employment are going to be impaired."

4. *Interest.* The judge instructed the jury, "Damages for the future should be reduced to present value because you know that if you need a hundred dollars a year from now,

you don't have to put a hundred dollars in the bank, or any other investment, to have it worth that a year from now and so on into the future." He also gave the following instruction: "You should not concern yourself with interest for any past damages because the clerk calculates those and adds those to any award." The defendant objected that the jury were left "with the impression that they may be able to add, illogical though it may seem, interest on any future damages which they may award." The judge did not give the instruction requested by the defendant, that "you are not to include any amount for interest."

The governing statute is unequivocal in requiring that the clerk add interest on the entire amount of the verdict. G. L. c. 231, § 6B. *Carey* v. *General Motors Corp.*, 377 Mass. 736, 746 (1979). Thus the instruction given was incomplete in stating that the clerk adds interest "for any past damages." But the jury could not have been misled; their verdict was entire and did not identify any sum for "past damages" or for future loss. The instruction was correct as to their duty with respect to interest as far as it went. We do not see any substantial risk that the jury, after reducing future loss to its present value, took the "illogical" course of adding interest to the sum awarded as present value.

No point is made in the present case of the disharmony between a discount to "present value" and the addition of interest "from the date of commencement of the action" under G. L. c. 231, § 6B, as amended through St. 1974, c. 224, § 1. The difference is a matter of more than eight years, at 6% until August 14, 1974, and 8% thereafter. *Porter* v. *Clerk of the Superior Court*, 368 Mass. 116 (1975). The solution, we think, is to instruct the jury to reduce future damages, not to "present value," but to their value at "the date of commencement of the action," in this case, February 1, 1971. The instruction should explain that the clerk adds interest on the amount of the verdict from that date.

5. *Income taxes.* The defendant requested that the jury be instructed "that any award of damages for the plaintiff is

exempt by law from either federal or state income taxation and you are therefore to award only the amount of damage as will reasonably compensate the plaintiff and you are not to include in your verdict compensation for any amount of federal or state taxes." The judge declined to give the instruction, and we are presented with a question of first impression in the Commonwealth.

It appears to be common ground that no part of the jury's $1,000,000 verdict is subject to Federal or State income tax. 26 U.S.C. § 104(a) (2) (1976). G. L. c. 62, § 2 (*a*). As the plaintiff points out, however, the requested instruction may be misleading. Under the judge's instructions as to future damages, the amount of the verdict was to be less than the total estimated damages by a discount reflecting interest to be earned on the award. That interest might be taxable as income.

The parties also seem to argue the tax issue on the common footing that the plaintiff's wage loss is to be measured by gross earnings before income taxes. That assumption would have been in accord with the overwhelming weight of authority twenty-five years ago. See Annot., 63 A.L.R.2d 1393, 1398-1407 (1959). We accept it for present purposes, but we point out that we seem never to have passed on the point. In a number of other jurisdictions, recent decisions have held that damages for lost earnings should be reduced by the estimated income tax liability on those earnings. *Floyd* v. *Fruit Indus., Inc.,* 144 Conn. 659, 671-673 (1957). *Runyon* v. *District of Columbia,* 463 F.2d 1319, 1322 (D.C. Cir. 1972) (D.C. law). *Downs* v. *United States,* 522 F.2d 990, 1005 (6th Cir. 1975) (Fla. law). *Adams* v. *Deur,* 173 N.W.2d 100, 104-106 (Iowa 1969). *Teal* v. *Allstate Ins. Co.,* 348 So.2d 83, 86 (La. App.), cert. denied, 351 So.2d 164 (La. 1977). *Tenore* v. *Nu Car Carriers, Inc.,* 67 N.J. 466, 484-495 (1975). *Mosley* v. *United States,* 538 F.2d 555, 558-559 (4th Cir. 1976) (N.C. law). *Turcotte* v. *Ford Motor Co.,* 494 F.2d 173, 185 (1st Cir. 1974) (R.I. law). *British Transp. Comm'n* v. *Gourley,* [1956] A.C. 185 (H.L.). Such a holding would require modification of what we say hereafter as to jury instructions.

On the assumption that damages are properly to be estimated without regard to income taxes, the great weight of authority has been that no instruction need be given the jury on the subject of income taxes. See Annot., 63 A.L.R.2d 1393, 1407-1417 (1959). On the other hand, a number of recent decisions have expressed approval of such an instruction. *Burlington N., Inc.* v. *Boxberger*, 529 F.2d 284, 295-298 (9th Cir. 1975). *Domeracki* v. *Humble Oil & Ref. Co.*, 443 F.2d 1245, 1248-1252 (3d Cir.), cert denied, 404 U.S. 883 (1971). *Abele* v. *Massi*, 273 A.2d 260, 261 (Del. 1970). *Tenore* v. *Nu Car Carriers, Inc.*, 67 N.J. 466, 495 (1975). *Gradel* v. *Inouye*, 252 Pa. Super. Ct. 392, 410-412 (1977). *Dempsey* v. *Thompson*, 363 Mo. 339, 344-347 (1952). See 2 F. Harper & F. James, Torts § 25.12, at 1327-1328 (1956); Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St. L.J. 212 (1958). In other cases, an instruction has been given like that requested here, and it has been held that there was no reversible error. E.g., *Bach* v. *Penn Cent. Transp. Co.*, 502 F.2d 1117, 1123 (6th Cir. 1974).

The whole subject was recently reviewed by the Supreme Court of the United States in *Norfolk & W. Ry.* v. *Liepelt*, 444 U.S. 490 (1980). In *McWeeney* v. *New York, N.H. & H.R.R.*, 282 F.2d 34 (2d Cir.), cert. denied, 364 U.S. 870 (1960), the court measured lost earnings without deduction for taxes, but suggested that a deduction might be required for a plaintiff at the upper end of the income spectrum. That suggestion had been applied in a number of cases governed by Federal law. *Burlington N., Inc.* v. *Boxberger*, 529 F.2d 284, 291 (9th Cir. 1975), and cases cited. In the *Liepelt* case, the Supreme Court held that the measure of damages in a wrongful death action under the Federal Employers' Liability Act was governed by Federal law, and that it was error to exclude evidence of the income taxes payable on the decedent's past and estimated future earnings. The Court did not refer directly to the income spectrum, but indicated that evidence of future taxes might be excluded if their impact would be trifling; in such cases "introduction of the evidence may cause more confusion than it

is worth." *Id.* at 494 n.7. The Court indicated that the present value of future earnings should also be estimated on an after-tax basis. The Court further held that it was error to refuse to instruct the jury that "your award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award." Two Justices dissented as to both the measure of damages and the jury instruction.

Notwithstanding the *Liepelt* decision, in the absence of any indication that the subject of income taxation was placed before the jury or entered into their deliberations, we are not prepared to hold that refusal to give an instruction on the subject is reversible error. We are not here confronted with a situation where counsel introduced the subject in argument to the jury. See *Hall* v. *Chicago & N.W. Ry.,* 5 Ill. 2d 135, 152-153 (1955). Nor did the jury inquire as to the taxability of the award. See *Kennett* v. *Delta Air Lines, Inc.,* 560 F.2d 456, 462-464 (1st Cir. 1977). We do not, however, intimate that an accurate instruction as to the taxability of the award would have been reversible error; much must be left to the sound discretion of the trial judge. Cf. *Goldstein* v. *Gontarz,* 364 Mass. 800, 812-814 (1974) (instructions on insurance coverage).

Where there is nothing in the evidence bearing on taxes, and the lawyers do not mention the subject in front of the jury, no instruction on the subject may be needed. If any instruction on the subject is to be given in such cases, it may be sufficient to tell the jury that their verdict is to be based on the evidence, that there is no evidence before them as to taxes, and that taxes are therefore none of their business. Where the subject of income taxes on the amount of the verdict has been brought to the attention of the jury in a serious way, the judge must exercise his best judgment and discretion, and frank disclosure that the amount of the verdict is not subject to Federal or State income taxation may be the better course.

6. *Excessive damages.* Admitting that the plaintiff's injuries were "unquestionably severe," the defendant argues

that the $1,000,000 damages awarded were "so greatly disproportionate to the injuries proven that they represent a miscarriage of justice," and that the judge abused his discretion by failing to order a remittitur or a new trial. The defendant points out that the plaintiff proved medical expenses of $24,527 and wage loss of $5,224 for about nine months.

The disproportion between special damages of $30,000 and a general verdict of $1,000,000 is a proper factor for the judge to take into account in deciding whether excessive damages have been awarded. *Tildsley* v. *Boston Elevated Ry.*, 224 Mass. 117, 118-119 (1916). But "in deciding whether a jury award is excessive or inadequate the trial judge has his traditional discretion, and his view that the jury verdict should stand would generally be respected by an appellate court, at least where damages were unliquidated." *Freeman* v. *Wood*, 379 Mass. 777, 781 n.9 (1980), and cases cited. See *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 660-662 (1978); *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 787-788 (1975).

We conclude that the judge did not abuse his discretion. There was evidence to support a finding that there would be substantial loss of earning capacity in the future. More important, there was evidence of enormous pain and suffering, which will persist over the plaintiff's estimated remaining life span of some forty-three years, compounded by permanent loss of bodily functions and massive scarring and disfigurement.

The defendant submitted to the judge an affidavit describing eighteen burn cases in which verdicts of $1,000,000 or more were returned. It argues to us that each of those cases involved more severe injuries than those in the present case. We agree with the court in *Wry* v. *Dial*, 18 Ariz. App. 503, 514-515 (1972), that reasoning from such "comparative verdicts" from various jurisdictions "is a dangerous game, to say the least." We decline the invitation to make the suggested comparisons.

*Judgment affirmed.*