**Dorothy STOVER, Appellee,**

v.

**LAKELAND SQUARE OWNERS ASSOCIATION, Appellant.**

**No. 87–1265.**

Supreme Court of Iowa.

Jan. 25, 1989.

Joseph L. Fitzgibbons and Steven D. Nelson of Fitzgibbons Brothers, Estherville, for appellant.

James A. Clarity and Lonnie B. Saunders of Narey, Clarity & Chozen, Spirit Lake, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL and ANDREASEN, JJ.

NEUMAN, Justice.

This appeal stems from a jury verdict entered against defendant Lakeland Square Owners Association (Lakeland) in a slip-and-fall case brought by plaintiff Dorothy Stover. Aside from its claim that the verdict is unsupported by the evidence, Lakeland's primary contention is that the trial court should have given an instruction on the nontaxability of damage awards and that the court's failure to do so entitles Lakeland to a new trial. Because we decide today that a trial court need not give a nontaxability instruction, and that Lakeland's other assignments of error are without merit, we affirm.

On May 10, 1985, Dorothy Stover fell while climbing a wooden stoop (single low step) in front of the condominium in which her doctor's office was located. The condominium is owned and managed by Lakeland. The fall broke her right shoulder severely, requiring installation of an artificial joint. This lawsuit followed.

In the course of the ensuing jury trial, evidence demonstrated that Mrs. Stover was seventy-nine years old at the time of her accident and had very poor eyesight. She testified that she had negotiated the stoop without difficulty many times, but that this time she thought she had caught the toe of her left foot on the "lip" protruding from the front of the stoop. She noted that while she did not know exactly why she had fallen, she believed the front end of the stoop was getting higher over time, and that it seemed to slope toward the building.

Jim Powers, president of Lakeland, testified that the stoop was installed because the ground around the condominium had in fact settled, increasing the distance from the surface of the sidewalk to the threshold of the doctor's office. The designer of the stoop, Bill Eich, testified that he had designed the structure to be as safe as possible, and that it had no handrail because the doctor's office door opened outward. He also noted that because the stoop was placed on top of the sidewalk, it would settle at the same rate as the sidewalk. He offered his opinion that the distance from the walk to the top of the stoop therefore remained constant.

At the close of plaintiff's case and again at the end of the presentation of all the evidence, Lakeland moved for directed verdict on the basis that substantial evidence did not support Stover's claims. The motions were overruled. When it came time to submit jury instructions, Lakeland asked for an instruction to the effect that damage awards are not reduced by state or federal income taxes. The court refused to so instruct. Lakeland also requested that the court give uniform instruction number 22.3, which states that a possessor of land must exercise reasonable care to protect invitees but need not "guarantee or insure" their safety. The court declined, and instead gave Instruction No. 20 which is identical to 22.3 but for the fact that it lacks the "guarantee or insure" language.

The jury awarded Mrs. Stover $45,000, reduced twenty percent by her comparative fault. Lakeland's motions for judgment n.o.v. and for new trial were both overruled.

On appeal from the judgment entered on the jury's verdict, Lakeland presents four grounds for reversal: (1) the trial court's refusal to submit Lakeland's "nontaxability" instruction to the jury; (2) the trial court's refusal to adopt Lakeland's proffered instruction on a landowner's duty to an invitee; (3) the trial court's denial of Lakeland's motions for directed verdict and judgment n.o.v.; and (4) the trial court's refusal to grant a mistrial based on counsel's reference to the name of an insurance adjuster who had visited Mrs. Stover.

Because this is an action at law, our review is confined to the correction of assigned errors. *Uffelman v. Fire Pension Bd.*, 424 N.W.2d 467, 467 (Iowa 1988). We

address Lakeland's contentions of error in the order presented.

## I. *Instruction on Nontaxability of Damage Awards:*

■ Defendant requested the following jury instruction:

You are instructed that any award herein is not income within the definitions of the Iowa Dept. of Revenue and the I.R.S., and consequently not subject to income tax.

The court declined to give this "nontaxability" instruction, and Lakeland objected on the basis that refusal to do so would allow the jury to speculate about the effect of taxes on Stover's damage award. Defendant later incorporated this objection into its motion for new trial.

■ Generally, Iowa law requires that a court give a requested instruction when it states a correct rule of law having application to the facts of the case and the concept is not otherwise embodied in the other instructions. *See Adam v. T.I.P. Rural Elec. Cooperative,* 271 N.W.2d 896, 901 (Iowa 1978). Nonetheless, error in giving or refusing to give an instruction does not require reversal unless the error is prejudicial. *Rudolph v. Iowa Methodist Medical Center,* 293 N.W.2d 550, 555 (Iowa 1980). It is undisputed that a personal injury award is not subject to federal or state taxes, *see* 26 U.S.C. § 104(a)(2) (1988); Iowa Code § 422.7 (1987). Thus the question presented is whether it was reversible error for the trial court to refuse to so instruct the jury.

This is not the first time we have considered the issue of a jury instruction on tax consequences. In *Adams v. Deur,* 173 N.W.2d 100, 105–07 (Iowa 1969), we ruled that failure to give an instruction regarding the potential tax effects on estate value and support in a wrongful death action did not constitute reversible error where the trial court had generally instructed the jury to take "all other facts and circumstances" in the evidence into account when calculating damages. *Id.* at 106. We based *Adams* on a three-part rationale that

guides jury instructions generally and can be summarized as follows:

1. Instructions should not marshal the evidence or give undue prominence to any particular aspect of a case;

2. Courts, when instructing the jury, should not attempt to warn against every mistake or misapprehension a jury may make;

3. Jurors must be left to their intelligent apprehension and application of the rules put forth in the instructions.

*Adams,* 173 N.W.2d at 106 (citing *Kelly v. Chicago, R.I. & P. Ry. Co.,* 138 Iowa 273, 277–78, 114 N.W. 536, 538 (1908)).

■ We note that the jury in the present case, not unlike the jury in *Adams,* was instructed to give "a fair, intelligent, dispassionate and impartial consideration of the evidence" when determining damages. We are confronted here, however, with a somewhat different issue than we faced in *Adams.* There the question was whether a jury, in calculating damages for loss of estate value and support, should be instructed to consider how much of decedent's future income would have gone to taxes had he lived. Hence *Adams* involved a proposed instruction for the jury to *take* taxes into account. The present case, however, concerns a dispute over an instruction *not* to take taxes into account. Hence we must decide if it is reversible error *not* to instruct a jury that personal injury damage awards are free from taxation.

A host of jurisdictions have considered this question. Although three divergent responses are generally expressed, we find the analysis of each instructive. In essence, courts differ widely over whether a jury must be advised that damage awards are nontaxable so that it will not artificially inflate an award to compensate for what it anticipates will be the possible (but misperceived) effects of taxation. *See Klawonn v. Mitchell,* 105 Ill.2d 450, 457, 475 N.E.2d 857, 860, 86 Ill.Dec. 478, 481 (1985).

The majority of jurisdictions considering the issue have held that refusal to give a nontaxability instruction is not reversible error. Three primary reasons are advanced: first, requiring a nontaxability in-

struction would open a "Pandora's box," legitimizing charges to the jury on " 'every conceivable matter as to which it should not misbehave or miscalculate,' " *see e.g., Klawonn,* 105 Ill.2d at 458, 475 N.E.2d at 860, 86 Ill.Dec. at 481 (quoting *Norfolk & Western Rwy. Co. v. Liepelt,* 444 U.S. 490, 503, 100 S.Ct. 755, 762, 62 L.Ed.2d 689, 699 (1980) (Blackmun, J., dissenting)); second, such an instruction requires a court to assume that jurors will not confine themselves to the evidence or the instructions, *see e.g., Gorham v. Farmington Motor Inn, Inc.,* 159 Conn. 576, 581, 271 A.2d 94, 96–97 (1970); and third, a nontaxability instruction injects an extraneous, collateral issue into jury deliberations, potentially leading a jury into confusion, speculation, and conjecture over the effect of taxes (or lack thereof), *see e.g., Turner v. General Motors Corp.,* 584 S.W.2d 844, 853 (Tex. 1979).

Having found that the foregoing considerations outweigh the propriety of giving a nontaxability instruction, these jurisdictions have found no error where trial courts have refused to give it. *See Young v. Environmental Air Prods., Inc.,* 136 Ariz. 206, 213, 665 P.2d 88, 95 (Ariz.App. 1982), *aff'd and modified on other grounds,* 136 Ariz. 158, 665 P.2d 40 (Ariz. 1983); *Elk Corp. v. Jackson,* 291 Ark. 448, 458, 725 S.W.2d 829, 835 (1987); *Hildyard v. Western Fasteners, Inc.,* 33 Colo.App. 396, 407, 522 P.2d 596, 602 (1974); *Gorham,* 159 Conn. at 580–82, 271 A.2d at 96–97; *Good Samaritan Hosp. Ass'n v. Saylor,* 495 So.2d 782, 783 (Fla.App. 4th Dist.1986) (wrongful death action) (*cf. Gray Drugfair, Inc. v. Heller,* 478 So.2d 1159, 1159 (Fla.App. 3d Dist.1985) (instruction discretionary)); *Kawamoto v. Yasutake,* 49 Haw. 42, 51, 410 P.2d 976, 981 (1966); *Klawonn,* 105 Ill.2d at 458, 475 N.E.2d at 860, 86 Ill.Dec. at 482; *Highshew v. Kushto,* 235 Ind. 505, 508, 134 N.E.2d 555, 556 (1956) (*cf. Wickizer v. Medley,* 169 Ind.App. 332, 337, 348 N.E.2d 96, 99–100 (1976) (nontaxability instruction error, but not reversible error)); *Spencer v. Martin K. Eby Constr. Co.,* 186 Kan. 345, 353, 350 P.2d 18, 22 (1960); *Paducah Area Public Library v. Terry,* 655 S.W.2d 19, 23–24 (Ky.App.1983);

*Michaud v. Steckino,* 390 A.2d 524, 534–35 (Me.1978); *Kirk v. Ford Motor Co.,* 147 Mich.App. 337, 347, 383 N.W.2d 193, 198 (1985) (wrongful death action); *Anunti v. Payette,* 268 N.W.2d 52, 55 (Minn.1978); *Kenton v. Hyatt Hotels Corp.,* 693 S.W.2d 83, 96–97 (Mo.1985); *Steinauer v. Sarpy County,* 217 Neb. 830, 847, 353 N.W.2d 715, 726 (1984); *Andersen v. Teamsters Local 116 Bldg. Club, Inc.,* 347 N.W.2d 309, 314 (N.D.1984); *Scallon v. Hooper,* 58 N.C.App. 551, 556, 293 S.E.2d 843, 845 (1982) (wrongful death action); *Terveer v. Baschnagel,* 3 Ohio App.3d 312, 315–16, 445 N.E.2d 264, 269 (1982) (wrongful death action); *Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 22, 507 A.2d 1, 12 (1986) (wrongful death action); *Armstrong v. Minor,* 323 N.W.2d 127, 128 (S.D.1982); *Turner,* 584 S.W.2d at 853; *Boeke v. International Paint Co.,* 27 Wash.App. 611, 617, 620 P.2d 103, 106 (1980) (instruction should only be given where lost future earnings are part of damages *and* plaintiff had "extremely high" income); *Crum v. Ward,* 146 W.Va. 421, 443–44, 122 S.E.2d 18, 30–31 (1961); *Hardware Mut. Cas. Co. v. Harry Crow & Son, Inc.,* 6 Wis.2d 396, 405–08, 94 N.W.2d 577, 581–82 (1959); *Barnette v. Doyle,* 622 P.2d 1349, 1366–67 (Wyo.1981); *see also Coy v. Simpson Marine Safety Equipment, Inc.,* 787 F.2d 19, 27 (1st Cir.1986) (wrongful death action); *Hansen v. Johns–Manville Prods. Corp.,* 734 F.2d 1036, 1045 (5th Cir.1984); *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 485 (6th Cir.1973); *Mackey v. Campbell Constr. Co.,* 101 Cal.App.3d 774, 789, 162 Cal.Rptr. 64, 71 (3d Dist.1980); *Henninger v. Southern Pacific Co.,* 250 Cal.App.2d 872, 878–80, 59 Cal.Rptr. 76, 81 (1st Dist. 1967); *Otis Elevator Co. v. Reid,* 101 Nev. 515, 521–22, 706 P.2d 1378, 1382 (1985) (nontaxability instruction appropriate only when discussion of tax-related issues at trial magnifies possibility that jury will consider tax consequences); *Stovall v. Perius,* 61 Or.App. 650, 659–60, 659 P.2d 393, 399 (1983) (applying majority view to cases not involving federal substantive law).

A smaller but significant number of jurisdictions, however, have come out in favor

of giving nontaxability instructions. The leading case advancing such an instruction is *Norfolk & Western Railway Co. v. Liepelt*, a United States Supreme Court decision requiring that such instructions be given in Federal Employers Liability Act (F.E.L.A.) cases. *See id.*, 444 U.S. 490 at 498, 100 S.Ct. 755 at 759, 62 L.Ed.2d 689 at 696 (1980). At the outset we note that the *Liepelt* court, because it was dealing with a wrongful death award under the F.E.L.A., necessarily rested its decision in part on the fact that such awards are based on a decedent's estimated *after tax* income. *Id.* at 493, 100 S.Ct. at 757, 62 L.Ed.2d at 693–94. Nevertheless, an examination of the *Liepelt* opinion is useful here because it summarizes the general rationale of the "minority" position on nontaxability instructions.

The minority rationale, exemplified by *Liepelt*, consists of three parts. First, such an instruction can do no harm as it is brief and easily understood, and can help by preventing a jury from inflating an award on the mistaken assumption it is subject to taxes. *Id.* at 498, 100 S.Ct. at 759, 62 L.Ed.2d at 696. Second, giving a nontaxability instruction would require no additional or qualifying instructions. *Id.* at 495–98, 100 S.Ct. at 758–59, 62 L.Ed.2d at 694–96. Third, consideration of tax effects would be no more speculative, confusing, or conjectural than a number of other variables that juries regularly consider, such as future inflation and future health. *See id.* at 494–98, 100 S.Ct. at 757–59, 62 L.Ed.2d at 694–96.

Several courts both before and since *Liepelt* have applied the same or a similar rationale and have found error in refusal to give a nontaxability instruction. *See In re Air Crash Disaster*, 803 F.2d 304, 314–15 (7th Cir.1986) (wrongful death action); *Grant v. City of Duluth*, 672 F.2d 677, 683 (8th Cir.1982) (wrongful death action); *Psychiatric Institute of Washington v. Allen*, 509 A.2d 619, 626–27 (D.C.1986) (instruction required, but failure to give it not reversible error in this wrongful death case); *High v. State Highway Dep't*, 307 A.2d 799, 805 (Del.1973) (wrongful death action); *Francis v. Government Employ-*

*ees Ins. Co.*, 376 So.2d 609, 612 (La.App. 1979); *Blanchfield v. Dennis*, 292 Md. 319, 323–27, 438 A.2d 1330, 1332–35 (1982); *Anderson v. Burlington Northern, Inc.*, 709 P.2d 641, 646–47 (Mont.1985); *Ruff v. Weintraub*, 105 N.J. 233, 243–45, 519 A.2d 1384, 1389–90 (1987); *Lanzano v. City of New York*, 71 N.Y.2d 208, 211–13, 519 N.E. 2d 331, 332–33, 524 N.Y.S.2d 420, 421–22 (1988); *Stowell v. Simpson*, 143 Vt. 625, 626–30, 470 A.2d 1176, 1177–79 (1983). Additionally, the Supreme Court since *Liepelt* has stated that the giving of a nontaxability instruction "furthers strong federal policies of fairness and efficiency in litigation of federal claims," and that *Liepelt* essentially announced a federal common-law rule in favor of giving nontaxability instructions. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486–88, 101 S.Ct. 2870, 2879–80, 69 L.Ed.2d 784, 796–97 (1981) (remanding case to state court for determination of whether state law mandated nontaxability instruction). While some states have been persuaded to apply this rule in the wake of *Liepelt* and *Gulf Offshore Co.*, *see, e.g., Lanzano*, 71 N.Y.2d at 212–13, 519 N.E.2d at 332, 524 N.Y.S.2d at 422, others have refused to adopt this minority position in purely state-law claims, *see e.g., Klawonn*, 105 Ill.2d at 456–58, 475 N.E.2d at 859–61, 86 Ill.Dec. at 481.

Finally, a handful of courts have chosen a middle ground. These jurisdictions hold that the giving of a nontaxability instruction rests in the trial court's discretion. *See, e.g., Yukon Equip. Co. v. Gordon*, 660 P.2d 428, 434 (Alaska 1983); *Irwin v. Pacific Southwest Airlines*, 133 Cal.App.3d 709, 717–18, 184 Cal.Rptr. 228, 231–32 (1982); *Gray Drugfair*, 478 So.2d at 1159; *Griffin v. General Motors Corp.*, 380 Mass. 362, 367–70, 403 N.E.2d 402, 407–08 (1980). Factors generally considered are whether taxation evidence was offered at trial and whether there is evidence of jury deliberation on the issue contrary to instruction by the court. *See, e.g., Griffin*, 380 Mass. at 370, 403 N.E.2d at 407. Where the parties have presented no evidence on tax effects or where there is no indication that a jury took taxes into ac-

count in calculating damages, these courts have generally found no abuse of discretion in refusal to give a nontaxability instruction. *Id.*, 403 N.E.2d at 407; *see Yukon Equip. Co.*, 660 P.2d at 434; *Irwin*, 133 Cal.App.3d at 717–18, 184 Cal.Rptr. at 231–32; *cf. Gray Drugfair*, 478 So.2d at 1159 (court found no abuse of discretion but did not explain factors influencing its decision).

We are thus presented with a choice between three alternatives. As an initial matter, we reject the third alternative—the discretionary approach—because it offers no clear guidelines for its application.

As between the majority and minority approaches, we find much to commend both views. Mindful that juries are made up of ordinary people who often have taxes on their mind, we recognize the minority's concern that a jury may mistakenly inflate an award to compensate for the imagined effect of taxes. We part company with the minority position, however, insofar as it *assumes* a jury will place tax consequences foremost in its deliberation and will artificially inflate an award to compensate for imagined tax consequences. Such a stance assumes that juries stray from their general instruction to decide cases only on the evidence presented; such an assumption is contrary to our statement in *Adams* that instructions should leave something to a jury's intelligent apprehension and application of the law. *See Adams*, 173 N.W.2d at 106.

Second, we are inclined toward the view that a nontaxability instruction would generally create more confusion, speculation, and conjecture than it would dispel by giving undue prominence to the issue of taxation. We recognize that if we were to require a nontaxability instruction we would merely deprive plaintiffs of a chance to take advantage of an erroneous conception. Moreover, such an instruction might aid a jury stuck on the question whether it should inflate its award to compensate for taxes due. We also realize, however, that requiring such an instruction would inevitably lead to the opposite jury dilemma: How much should it hold down the amount of the award *because it is nontaxable*? In

short, we see the potential for confusion, conjecture, and speculation over the effect of taxes whether or not a nontaxibility instruction is given.

Our final concern echoes the problem we perceived in *Adams*. There we noted that jury instructions should not presume to warn against every mistaken belief or misapprehension a jury may hold. *Adams*, 173 N.W.2d at 106. Our fundamental reluctance to sanction a nontaxability instruction stems from our fear of opening a veritable "Pandora's Box" of possible cautionary instructions. In other words, if a court is required to instruct on nontaxability of damages, why should it not also instruct on the impact of other factors affecting the award, such as contingency fees and court costs? The *Liepelt* majority may have dismissed this argument out of hand, *see* 444 U.S. at 499, 100 S.Ct. at 759, 62 L.Ed.2d at 696, but we are persuaded by contrary authority that this unanswered question furnishes a compelling reason not to give the instruction. *See Liepelt*, 444 U.S. at 503, 100 S.Ct. at 762, 62 L.Ed.2d at 699 (Blackmun, J., dissenting) ("Charging the jury about every conceivable matter as to which it should not misbehave or miscalculate would be burdensome and could be confusing. Yet the Court's decision today opens the door to that possibility."); *see also Klawonn*, 105 Ill.2d at 458, 475 N.E.2d at 860, 86 Ill.Dec. at 481–82.

For these reasons, we think it wiser to side with the majority of jurisdictions that hold it is not reversible error for a trial court to refuse to give a nontaxability instruction. On balance, the drawbacks of such an instruction seem to outweigh its benefits. Especially here, where the parties offered no evidence concerning taxation at trial, the possibility for confusion, speculation, and conjecture would be great. We therefore hold that the trial court did not commit reversible error in refusing to give a nontaxability instruction.

II. *Instruction on a Landowner's Duty of Care:*

■ To instruct the jury on Lakeland's duty of care to invitees, the district court

utilized Iowa Uniform Jury Instruction No. 20, which states in pertinent part:

> This standard of care does not require premises to be free from all conditions that could possibily cause harm to an invitee, but a possessor of real estate is liable for physical harm to invitees caused by certain conditions existing on the premises if he fails to use reasonable care to protect invitees from harm therefrom.

This instruction was given over Lakeland's request that the court use Instruction No. 22.3, which is identical to Instruction No. 20 but for the language emphasized below:

> This standard of care does not require the premises to be free from all conditions that could possibly cause harm *so as to guarantee or insure the safety of all invitees....*

(Emphasis added.) Lakeland objected to Instruction No. 20 because it felt that omission of the "guarantee or insure" language would effectively hold it to a higher standard than the law provided.[1]

We consider Lakeland's appellate challenge to the court's instruction in the light of the general rule that a party is not entitled to a particular instruction, but only to an instruction that adequately states the law as applied to the facts. *See Rumley v. City of Mason City*, 320 N.W.2d 648, 652 (Iowa 1982). For a number of reasons, we believe that the instruction submitted to the jury adequately stated the pertinent law.

In recent years, this court has applied the principles set out in the Restatement (Second) of Torts at sections 343 and 343A, concerning a landowner's duty to invitees. *See Byers v. Contemporary Inds. Midwest, Inc.*, 419 N.W.2d 396, 397 (Iowa 1988); *Mundy v. Warren*, 268 N.W.2d 213, 217 (Iowa 1978); *Hanson v. Town and Country Shopping Center, Inc.*, 259 Iowa 542, 546–49, 144 N.W.2d 870, 873–75 (1966). Generally, these principles state that a landowner is liable to invitees for harm caused by a condition on the land only if the owner:

> (a) Knows or by the exercise of *reasonable care* should discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

> (b) Should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

> (c) Fails to exercise *reasonable care* to protect them against the danger.

Restatement (Second) of Torts § 343 (1965) (emphasis added); *see Mundy*, 268 N.W.2d at 217 (quoting Restatement). These principles are qualified by section 343A, which applies when a condition on the land is known or obvious to the invitee. Restatement (Second) of Torts § 343 Comment a, § 343A (1965). In such a case, liability will arise only when a landlord "should anticipate the harm despite such knowledge or obviousness." *See id.* § 343A; *Mundy*, 268 N.W.2d at 217.

While some of our earlier opinions on a landowner's duty of care also set forth the "guarantee or insure" language, *see e.g., Frantz v. Knights of Columbus*, 205 N.W. 2d 705, 709 (Iowa 1973), they did so in concert with the Restatement (Second) principle of "reasonable care." Our more recent opinions have concentrated primarily on the reasonable care language. *See e.g., Byers*, 419 N.W.2d at 397; *Mundy*, 268 N.W.2d at 217. Because the term "reasonable care" is not an absolute standard, it contains by implication the concept that a landowner does not guarantee or insure the safety of invitees. Instruction No. 20 was thus an adequate statement of the law and the court's refusal to give Lakeland's instruction furnished no ground for new trial. *See McConnell v. Aluminum Co. of America*, 367 N.W.2d 245, 248 (Iowa 1985); Iowa R.App.P. 14(f)(3). The assignment of error is without merit.

### III. *Motions for Directed Verdict and Judgment N.O.V.:*

Lakeland moved for directed verdict at the close of Stover's case and again

---

**1.** We note that the recently revised and renumbered uniform instructions do not contain these alternative versions and the "guarantee or insure" language has been omitted entirely. *See* Iowa Civil Jury Instruction 900.1 (1987).

after submission of all the evidence on the ground that Stover had not presented sufficient evidence to generate a jury question on Lakeland's liability. The court denied these motions, and later denied defendant's motion on similar grounds for judgment n.o.v. *See* Iowa R.Civ.P. 243.

Time-honored rules govern our review of a court's ruling on such motions. The primary standard is that of substantial evidence; where no substantial evidence exists to support each element of a plaintiff's claim, directed verdict or judgment n.o.v. is proper. *Woodruff Const. Co. v. Mains*, 406 N.W.2d 787, 789 (Iowa 1987). Substantial evidence is that which a "reasonable mind would accept as adequate to reach a conclusion." *In re Foster*, 426 N.W.2d 374, 376 (Iowa 1988). Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury. *Rippel v. J.H.M. of Waterloo, Inc.*, 328 N.W.2d 499, 500 (Iowa 1983). The trial court must consider the evidence in a light most favorable to the nonmoving party. *Meeker v. City of Clinton*, 259 N.W.2d 822, 828 (Iowa 1977). On appeal, we consider the evidence in a way most favorable to upholding the verdict. *See Moyers v. Sears–Roebuck & Co.*, 242 Iowa 1038, 1041, 48 N.W.2d 881, 883 (1951).

Applying these rules to the case before us, we are struck by what a close case the evidence demonstrates. We cannot, however, say the court committed reversible error in refusing to grant a directed verdict or judgment n.o.v.

Stover's allegations of negligence were three-fold: that Lakeland's stoop was in a defective and unreasonably dangerous condition; that Lakeland created an unreasonable risk of harm by failing to provide handrails near the stoop; and, that Lakeland breached its duty of ordinary care by failing to warn the public of the condition of the stoop. As noted previously, a landowner is liable to invitees for injury from a condition on the property if the landowner:

(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to an invitee, and (b) should suspect that an invitee will not discover or realize the danger, or will fail to protect himself from it.

*Byers*, 419 N.W.2d at 397.

The contractor who designed the stoop testified at trial that the distance between the top of the stoop and the surface of the sidewalk remained the same while the sidewalk settled. Mrs. Stover, however, testified that she thought the front of the stoop was getting higher and that the stoop was beginning to slant toward the building. Given this conflicting testimony on the condition of the stoop, combined with evidence that the ground around the condominium was settling, a reasonable mind could conclude that the settling of the ground was causing the stoop to tilt. Whether this condition caused an unreasonable risk of harm to Lakeland's invitees, particularly the many elderly ones, remained a question for the jury. We thus believe there was sufficient evidence to generate a jury question on Lakeland's exercise of due care and proximate cause. Likewise, we cannot say that there was no substantial evidence supporting the jury's verdict which apportioned eighty percent of the fault to Lakeland and twenty percent to Stover. We therefore hold that the trial court did not commit reversible error in refusing to grant a directed verdict or judgment n.o.v.

### IV. *Motion for Mistrial:*

Lakeland's fourth and final assignment of error involves its motions for mistrial and new trial because plaintiff's counsel mentioned the name "Mr. King" while examining Mrs. Stover. Because Mr. King is an insurance adjuster, Lakeland contends that Stover impermissibly injected evidence of insurance into the case, and the trial court abused its discretion by failing to grant a mistrial or new trial.

We test the court's denial of these motions under an abuse of discretion standard. *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 915 (Iowa 1975). The query is whether the trial court clearly abused its discretion, that is, whether prejudice resulted from counsel's mention of "Mr. King," or whether a different result could have

been probable but for the mention of his name. *See Yeager v. Durflinger*, 280 N.W.2d 1, 8 (Iowa 1979). We give extremely broad, though not unlimited, discretion to a trial court on motions for mistrial and new trial. *Id.* at 7, 8. This is because we recognize the trial court is in a better position to appraise the situation in the context of the full trial. *Id.*

We can find no abuse of discretion here. The record reveals the following exchange during counsel's examination of Mrs. Stover:

Q. Did anybody from Lakeland Square get ahold of you after this accident?

A. Not to my knowledge.

Q. With the exception of Mr. King, who came to visit you—

A. Yes.

Q. —with me one day?

A. Mm-hmm.

Although we recognize that it is generally improper for the subject of liability insurance to be raised before the jury, we do not presume prejudice from every mention of insurance at trial. *See Evans*, 231 N.W. 2d at 914. Moreover, we question whether this oblique reference to "Mr. King" even raises the specter of insurance coverage. As counsel for Stover noted in its brief, "King" is a very common name. There was no testimony concerning Mr. King's employment. This was hardly a "blatant reference[ ] to coverage so as to inform the jury that defendant was insured." *Carter v. Wiese Corp.*, 360 N.W.2d 122, 131 (Iowa App.1984). We therefore conclude that the court did not abuse its discretion in denying defendant's motions for mistrial and new trial.

## V. *Conclusion:*

We have considered all of Lakeland's assignments of error and find them to be without merit. The judgment of the district court is therefore affirmed.

AFFIRMED.