# IN THE COURT OF APPEALS OF IOWA

No. 24-1915
Filed October 29, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ZACHARY KARL HUNT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Warren County, Thomas P. Murphy, Judge.

        A defendant appeals from his conviction for possession of a dangerous weapon while under the influence. **AFFIRMED.**

        Raya Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

Zachary Hunt appeals from his conviction for possession of a dangerous weapon while under the influence, a serious misdemeanor, pursuant to Iowa Code section 724.4C (2024).  Specifically, he contends (1) the evidence was insufficient to support his conviction and (2) the district court abused its discretion by refusing his requested jury instruction.

Because we find the jury's verdict to be supported by substantial evidence and an existing jury instruction adequately embodied Hunt's requested instruction, we affirm.

## I. Background Facts and Proceedings

At around 1:00 a.m. on June 22, 2024, Officer Nyan Baker responded to a trespassing complaint in Indianola.  After arriving on scene, he encountered three people: Kaleb Reha, Stacie Reha, and Zachary Hunt, the defendant.  Kaleb informed Officer Baker that he wanted to trespass Stacie, his mother, off his property.

Hunt, who is Kaleb's cousin and Stacie's nephew, quickly interjected himself in the conversation, explaining this was a familial matter and he did not want to escalate things.  To better understand the situation, Officer Baker instructed Hunt and Stacie to stand aside so he could speak to Kaleb privately.  Kaleb then recounted to Officer Baker how he had received a knock on his door, where he found Hunt and Stacie in the hallway of his apartment.  But Kaleb was on bad terms with his mother and yelling ensued during their encounter, causing him to call 911.

After listening to Kaleb's side of the story, Officer Baker questioned Hunt and Stacie. Hunt explained he was attempting to make amends between Kaleb and Stacie, reiterating that this was a familial matter and he did not want to escalate the situation. Officer Baker then directed Stacie towards his vehicle to issue her a trespass warning and dismissed her from the scene. But before the affair could be resolved, Hunt abruptly confronted the officer and stated "[he had] a registered firearm." Officer Baker was concerned by this statement and questioned Hunt as to the purpose of the conversation. Hunt said he wanted his property to be returned because Stacie was being trespassed, indicating that Stacie was now in possession of his gun.

Officer Baker became concerned because both Hunt and Stacie exhibited signs of intoxication. The officer specifically observed an odor of alcohol, as well as Hunt's slurred speech, watery bloodshot eyes, lethargic behavior, repetitive speech patterns, and conversational hijacking. Officer Baker asked Hunt why he had given his gun to a "highly intoxicated individual," to which Hunt responded, "[I]s she?" Kaleb then intervened and asked how Hunt could not have known Stacie was intoxicated, citing her uncoordinated speech and movement. Now aware that Stacie had a gun, Officer Baker left to track her down.

The officer swiftly located Stacie down the street from the initial scene, where he found a loaded handgun in the bag she was carrying. He took the gun, rendered it safe, and stored it in his police vehicle. He subsequently returned to tell Hunt it was illegal for Stacie to carry the gun due to her level of inebriation. Again, Hunt denied having knowledge of her condition. Officer Baker then asked whether Hunt had anything to drink that night. Hunt further denied consuming any

alcohol himself. During the remainder of the officer's questioning, Hunt stated he had met up with Stacie near Kaleb's property and had no knowledge of where she had been prior to them meeting. Notably, he remarked that he "took [his] shirt off because it was hot . . . [and] gave her [the gun] to hold onto until [they]were done."

At this point, Officer Baker was convinced Hunt handed his gun to Stacie while under the influence of alcohol and inquired whether Hunt would be willing to take a preliminary breath test. Hunt refused to do so and was taken to the Warren County Jail. There, he once more refused to participate in a breath test.

At trial, the only testimony presented came from law enforcement. As a result, Hunt moved to include the following jury instruction:

> You have heard testimony from law enforcement officers. The fact that a witness is employed as a law enforcement officer does not mean that his testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness. You must decide, after reviewing all the evidence, whether you believe the testimony of the law enforcement witness and how much weight, if any, it deserves.

The district court denied the motion, stating that existing instructions adequately covered the issue. Hunt was subsequently convicted of possession of a dangerous weapon while under the influence. Hunt appeals.

**II. Standard of Review**

We review sufficiency of the evidence for errors at law. *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). "In evaluating the sufficiency of the evidence, we consider whether the finding of guilt is supported by substantial evidence in the record." *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (cleaned up). "Substantial evidence exists when the evidence would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Kelso-Christy*, 911

N.W.2d at 666 (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017) (citation omitted).

While we review challenges to a required jury instruction for errors at law, we review the refusal to give a discretionary jury instruction for abuse of discretion. *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020).

> When assessing a district court's decision for abuse of discretion, we only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable. Grounds or reasons are untenable if they are "based on an erroneous application of the law or not supported by substantial evidence."

*State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017) (citations omitted).

**III. Analysis**

Hunt contends there was insufficient evidence to support his conviction and the district court erred in refusing his requested jury instruction.

### A. Sufficiency of Evidence

Hunt challenges the sufficiency of the evidence in two ways, first arguing the State presented insufficient evidence that he was intoxicated, and second, the State presented insufficient evidence to show he possessed or carried his gun at the time the State alleges he was intoxicated. We disagree with Hunt on both points and conclude substantial evidence supports the jury's conclusion that he carried a dangerous weapon while under the influence.

Beginning with Hunt's intoxication argument, Iowa Code section 724.4C makes it a crime to carry a dangerous weapon while intoxicated. "The definition

of 'intoxicated' (found in section 321J.2) means a person is under the influence of alcohol or drugs (or some combination of them)." *State v. Johnson*, 950 N.W.2d 232, 236 (Iowa 2020). Hunt specifically asserts that Officer Baker's testimony was insufficient to support a finding that he was intoxicated. Hunt argues the officer's testimony was contradictory because he stated Hunt had slurred his speech without his words bleeding together. Additionally, he argues the officer's testimony describing his watery bloodshot eyes was unreliable because the defendant was wearing a hat and it was dark outside when the officer made those observations.

"Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." *State v. Thompson*, No. 23-1770, 2025 WL 707777, at *3 (Iowa Ct. App. Mar. 5, 2025) (quoting *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014)). In this case, the jury was able to hear testimony from two law enforcement officers and reach a conclusion about the testimony's reliability and weight. Officer Baker testified that Hunt refused to take breath tests and exhibited numerous signs of intoxication in addition to his slurred speech and watery bloodshot eyes. *See State v. Shannon*, No. 17-0717, 2018 WL 1182561, at *2 (Iowa Ct. App. Mar. 7, 2018) (finding an officer's observations of signs of impairment provides substantial evidence that a defendant was under the influence); *State v. Doolin*, No. 17-1715, 2019 WL 1055784, at *2 (Iowa Ct. App. Mar. 6, 2019) (determining an officer's testimony describing the defendant's alcoholic odor, slurred speech, and watery bloodshot eyes was sufficient evidence for a jury to find that he was intoxicated), *aff'd in part and vacated in part*, 942 N.W.2d 500 (Iowa 2020). Moreover, the jury viewed body camera footage from Officer Baker, allowing it to independently

assess Hunt's condition. Despite Hunt's claim that the officer's testimony was insufficient to show he was intoxicated, "that conclusion was for the jury to make." *Thompson*, 2025 WL 707777, at *3 (quoting *State v. Perry*, No. 23-1062, 2024 WL 2839215, at *4 (Iowa Ct. App. June 5, 2024)). For the foregoing reasons, we conclude substantial evidence supports the jury's determination that Hunt was intoxicated.

Moving onto Hunt's possession argument, to convict a defendant of possession of a dangerous weapon while under the influence the State must prove the weapon was carried "on or about the [defendant]." *State v. Shorter*, 945 N.W.2d 1, 7 (Iowa 2020) (quoting Iowa Code § 724.4C(1)(a)). Here, Hunt argues the State's evidence is insufficient to support a finding that he carried his gun at the time the State alleges he was intoxicated because the gun was not found on his person. Specifically, Hunt points to the absence of a timeline accounting for when the gun handoff between him and Stacie occurred. He additionally references Officer Baker's testimony that Hunt could have "potentially" given the gun to Stacie sometime before he was alleged to be intoxicated. But this argument overlooks the significant circumstantial evidence presented by the State.[1]

During his conversation with Officer Baker, Hunt stated he and Stacie had met outside near Kaleb's property and did not know where she had been prior to that. Hunt additionally stated he removed his shirt because of the summer heat, causing him to give Stacie his gun. This information could reasonably be used to infer that the gun handoff occurred during their meeting outside of Kaleb's property.

---

[1] Direct and circumstantial evidence are treated as equally probative. *Ernst*, 954 N.W.2d at 57.

Furthermore, it could be inferred that Stacie was intoxicated at the time of the handoff because Hunt was unaware of her intoxication and, thus, her alcohol consumption likely occurred before they met. Consequently, the jury could reason that Hunt exhibited poor judgement at the time of the handoff because he did not notice Stacie's inebriated condition, leading to the conclusion that he was in an impaired state when handing off his gun.

Moreover, Hunt expressed to officers he wanted Stacie to hold onto the gun until "[they] were done." This could be fairly understood to mean he wanted her to keep his gun until they concluded their confrontation with Kaleb, indicating the handoff likely took place in close temporal proximity to the confrontation. This significantly narrows the window in which the handoff could have occurred and makes it doubtful that Hunt became intoxicated during the short period after the handoff and before Officer Baker's arrival, especially when Kaleb had previously identified Stacie's behavior as evidence of her intoxicated state rather than indicating her or Hunt had consumed alcohol during the confrontation. *See State v. Walker*, 499 N.W.2d 323, 325 (Iowa App. 1993).

"Juries must necessarily make inferences when finding facts based on circumstantial evidence. . . . The relevant inquiry is not whether a fact finding is based on an inference drawn from another inference." *Ernst*, 954 N.W.2d at 59 (internal citation omitted). We instead ask if "the relevant inquiry is whether a fact finding is a legitimate inference 'that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted). Considering the evidence in the light most favorable to the jury's verdict, including the reasonable inferences drawn

therein, we conclude there is substantial evidence supporting that Hunt carried a dangerous weapon while under the influence.

### B. Abuse of Discretion

Alternatively, Hunt argues the district court should have admitted his proposed jury instruction and abused its discretion by not doing so. Specifically, he contends that "Iowa law generally requires courts to give a requested instruction if [(1)] it correctly states a rule of law, [(2)] applies to the facts of the case, and [(3)] is covered in other instructions." The first two elements are correctly stated, but the third is not. The third element requires the requested instruction "is *not* otherwise embodied in the other instructions." *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989) (emphasis added)).

Hunt's requested instruction aimed to address the potential for jurors to give excessive weight to police officer testimony, stating "[t]he fact that a witness is employed as a law enforcement officer does not mean that his testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness." But Instruction 7 made it clear that jurors "may believe all, part, or none of any witness's testimony" in "determining the facts." Thus, Hunt's instruction amounted to a narrower restatement of the broad principle illustrated by Instruction 7.

Because the requested instruction was adequately addressed elsewhere, the district court had the discretion to either admit or deny it. *See State v. Williams*, 929 N.W.2d 621, 632–33 (Iowa 2019) (finding it was in the district court's discretion to admit or deny a requested implicit-bias instruction where the issue was already

covered by a broader instruction). Consequently, we find the district court did not abuse its discretion in declining to give Hunt's requested instruction.

**IV. Conclusion**

Hunt's conviction for possession of a dangerous weapon while under the influence is affirmed.

**AFFIRMED.**